# LANIER *vs.* THE BR. BANK AT MONTGOMERY.

1. Where the sheriff of one county levies an execution issuing from another on personal property, to which a claim is interposed, the copy of the execution, returned by him to the Circuit Court of the county in which the levy is made, is admissible in evidence, without other proof than that which the return affords.

2. If one, with the intent to defraud the creditors of an insolvent debtor, intermixes his money with that of the debtor in the purchase of personal pro-

perty, so that it cannot be ascertained what portion of the purchase money belonged to each, and takes the title in his own name, the creditors may levy on the property and sell it in satisfaction of their demands; but in such case, the intent with which the act is done is a material enquiry, and one which should be submitted to the determination of the jury.

3. Where, on a trial of the right of property, the question at issue is whether the property in controversy was purchased and paid for with the funds of the defendant in execution, it is admissible to prove, as a circumstance from which an inference may be drawn, that a note, which had belonged to the defendant, was found, after the death of the vendor, in the hands of his executors.

4. Where part of a transaction has been elicited from a witness on the direct examination, the opposite party has the right, on the cross examination, to enquire into all the facts and circumstances connected with it, although they might not be admissible as independent testimony.

ERROR to the Circuit Court of Tallapoosa.    Tried before the Hon. John J. Woodward.

THIS was a trial of the right of property in certain slaves, levied on by the sheriff of Tallapoosa county as the property of Robert J. W. Crockett, under an execution against him from the County Court of Montgomery county in favor of the defendant in error, and claimed by the plaintiff in error as the trustee of Mrs. Crockett, wife of the defendant in execution. The plaintiff in execution offered in evidence a certified copy of the execution, which the sheriff of Tallapoosa had returned, together with the affidavit and claim bond, to the clerk of the Circuit Court.    To this evidence the claimant objected, but his objection was overruled and the evidence allowed to go the jury.    The plaintiff in execution further offered as a witness one Pinkston, who testified that a tract of land that belonged to Robert J. W. Crockett was sold in 1842 by the sheriff of Montgomery county and purchased by one Goldthwaite; that Goldthwaite allowed Crockett to sell the same and make what profit he could from it, he paying said Goldthwaite the amount of his bid at sheriff's sale with ten per cent thereon; that the witness afterwards bought the land from Crockett, paid Goldthwaite the sum going to him, and gave his note to Crockett for $680, which he afterwards paid to the executors of Dr. Brown.    This evidence was offered, in connection with other facts, which will be found stated in the opinion, and was objected to by the claimant, but his objection was overruled and the evidence admitted.

These with the facts embodied in the opinion will be sufficient for a correct understanding of the points decided.

PARSONS & WHITE, for the plaintiff in error.

BELSER, RICE, and ELMORE, for the defendant.

DARGAN, C. J.—1. The cases of Garrett v. Rhea, 9 Ala. 134, and Henderson v. The Branch Bank, 11 ib. 855, are conclusive to show that the court did not err in permitting the copy of the execution to be read in evidence, without further proof than the return of the sheriff showing that it was a copy.

It is made the duty of the sheriff, when he levies on property to which a claim is interposed, if the execution shall have issued from another county, to make out a copy of the execution and return the same with the affidavit and bond, to the Circuit Court of the county in which the levy is made, and to return the original to the court from which it issued.—Clay's Dig. 213, § 63. The copy thus returned by the sheriff becomes one of the papers in the cause and authorises the court to proceed and try the right of property, without other proof that it is a correct copy than the sheriff's return.

2. The leading facts touching the merits of this case may be thus stated: Robert J. W. Crockett, the defendant in execution, owned the slaves in controversy, a tract of land, and other personal property. In 1842, the sheriff of Montgomery county levied two executions on all his property, both real and personal. At the sale Dr. Brown bought the slaves, and paid for them two thousand dollars, and received a bill of sale from the sheriff, Goldthwaite bought the land, and Joseph D. Hopper bought most of the other property. Goldthwaite gave Robert J. W. Crockett the privilege of selling the land, allowing him to retain all that he might get for it over the amount that he, Goldthwaite, had given at sheriff's sale and ten per cent thereon. Under this arrangement, the land was sold to Pinkston, who paid Goldthwaite the amount he gave at sheriff's sale, and ten per cent thereon, and in addition gave his note to Crockett for $680. In consideration of this purchase by Pinkston, Crockett procured for him a release of his wife's dower to the land, without which Pinkston would not have made the purchase. Hopper, who bought most of the personal property, except the slaves, sold

enough of it to pay all he had given for it, except about eighty or one hundred dollars, and at the request of R. J. W. Crockett conveyed such as he had not sold to Elijah Crockett without any consideration received from him, and charged the eighty or one hundred dollars to R. J. W. Crockett. Dr. Brown transfered the slaves by a quit claim conveyance to Elijah Crockett, which does not recite the consideration, and the evidence does not clearly show how much was paid to him. The testimony of Elijah Crockett, however, tends to prove that a part of the money paid to Dr. Brown was paid by him, but how much is uncertain. After the death of Brown, the note of $680 given by Pinkston to R. J. W. Crockett was found in the possession of his executors, and was paid to them. On the 18th of July 1843, Elijah Crockett executed a deed conveying the slaves he had purchased of Brown, and also all the personal property that had been transfered to him by Hopper, to Reuben Lanier, the claimant, for the sole use of Mrs. Crockett, the wife of R. J. W. Crockett, and her children. This deed, however, was voluntary and without consideration. It will be seen at once that the controversy was, whether the consideration paid to Dr. Brown was, in truth, paid by R. J. W. or by Elijah Crockett. If the money paid to Brown was the money of R. J. W. Crockett, it is then very clear that the slaves are liable to the execution; for if personal property is bought with the money of an embarrassed debtor, and the title is taken in the name of another, the property may be levied on and sold by execution, at law.—Abney v. Kingsland & Co., 10 Ala. 355. So if A. intermixes the money of B., who is an insolvent debtor, with his own, in the purchase of personal property and takes the title in his own name, and it cannot be ascertained by the creditors of B. what portion of the purchase money belonged to him, and this is done with the view and intent to defraud B.'s creditors, we think it equally clear that the creditors of B. may levy on the property and sell it in satisfaction of their demands. Nor can A. complain that he may be injured by the sale, for having by his own fraud intermixed his money with that of an insolvent debtor, with the view to defeat the creditors, he must suffer rather than they; for they had no agency in producing this confusion of interest, and if any one must suffer thereby, it is but right that he who committed the fraud, with the intent to injure

others, must himself bear the loss. This view, we think, is sustained by the case of Abney v. Kingsland & Co., before refered to, and is in consonance with the principles of justice.. A different rule might give fraud the mastery over the law. Whether a court of equity would interfere at the instance of the purchaser and separate his interest from that of the insolvent debtor, upon his showing the interest of each in the purchase, is a question not before us, and therefore, not decided. But at law we cannot doubt but that the whole must be sold.

If, however, the purchase with the joint funds was not intended to defraud the creditors of the insolvent debtor, then a different rule would apply, and the creditors would have to resort to a court of equity to separate the interest of their debtor from that of the purchaser, for they could subject the debtor's interest only to the satisfaction of their demand ; for if the purchaser did not intend to commit a fraud, in producing the confusion of interest in making the purchase and taking the title in his own name, then there is no principle of law that will subject his interest to the satisfaction of the debts of the creditors of the insolvent debtor.

Let us apply these principles to the second charge given by the court to the jury. The substance of this charge is, that if any part of the purchase money paid to Thomas Brown belonged to R. J. W. Crockett, and Elijah Crockett knew it, then the slaves were liable to the execution. This charge rendered it unnecessary for the jury to consider the intent with which the purchase was made, and assumes as a legal conclusion that the slaves were liable to the execution, if any portion of the purchase money belonged to R. J. W., and this was known to Elijah Crockett, without regard to the intent with which the purchase was made. But we have seen that to render the slaves liable, the purchase having been made by Elijah and the title made to him, it must appear either that the entire purchase money was paid by R. J. W., or if there was a confusion of interest by reason of the purchase being made with the joint funds of both Elijah and R. J. W. Crockett, then it must further appear that the purchase was so made with the intent to defraud the creditors of R. J. W. Crockett. The charge, therefore, rendered it unnecessary for the jury to consider of a material inquiry, to wit, the intention with which the purchase was made.

This was erroneous, for the charge subjected the slaves to the execution, if any portion of the purchase money paid to Dr. Brown belonged to R. J. W. Crockett, without regard to the intent that influenced Elijah in making it.

3. We think it clear that the testimony of Pinkston was admissible. He stated facts and circumstances, from which an inference might be fairly drawn that a portion of the purchase money paid Dr. Brown was paid by, or belonged to R. J. W. Crockett.

4. The claimant introduced Joseph D. Hopper, who proved that he purchased at the sheriff's sale all, or nearly all of the personal property, except the slaves, and also, that he conveyed a portion of the property so purchased to Elijah Crockett at the request of R. J. W., and without any consideration moving from Elijah to him, but that before he did so, he had sold enough to reimburse himself in the amount of money he paid at sheriff's sale, less eighty or one hundred dollars. The plaintiff, on the cross examination of Hopper, proved that he had charged R. J. W. Crockett, the defendant in execution, with this sum of eighty or one hundred dollars, and had brought it forward in a settlement he subsequently had with him. To this testimony, brought out on the cross examination, the claimant objected, but his objection was overruled. It is not necessary to decide whether the testimony objected to would have been admissible, had it been brought forward as independent proof, and not in reply to what had been proved by Hopper on his direct examination. But inasmuch as the claimant himself proved the transfer from Hopper to Elijah Crockett, it is evident that the plaintiff had the right to enquire into all the facts and circumstances connected with the transfer, and consequently there was no error in admitting this portion of the testimony of Hopper.

It is unnecessary to notice the question raised in the argument, respecting the right of Mrs. Crockett to require compensation from her husband for releasing her right to dower in his lands, for the question is not raised by the record. The general rules, however, on this subject will be found in the case of Hoot et al. v. Sorrell et al., 11 Ala. 386.

For the error we have pointed out in the second instructions, the judgment must be reversed and the cause remanded.

CHILTON, J., not sitting.