(87 South. 221)

RUSSELL v. STATE.　(4 Div. 623.)

(Court of Appeals of Alabama.　April 13, 1920. Rehearing Denied May 12, 1920.)

1. CRIMINAL LAW ☞364(1)—WHETHER ACCUSED CUT DECEASED AFTER SHE FELL ADMISSIBLE AS RES GESTÆ.

In a homicide case, court properly overruled objection of defendant to the question whether defendant cut deceased after she fell, since it related to res gestæ of the offense.

2. HOMICIDE ☞158(1)—THREATS ADMISSIBLE IN EVIDENCE.

In a homicide case court did not err in overruling objection of defendant to question,

"Did she [defendant] say anything about what she was going to do to C. [deceased]" purpose clearly being to prove threats made by defendant against deceased.

3. WITNESSES ☞248(2)—ANSWER HELD RESPONSIVE.

An answer, "Yes, sir; she said she was going to kill her," was responsive to the question, "Did she say anything about what she was going to do to C.?"

4. WITNESSES ☞287(1) — QUESTION HELD PROPER ON REDIRECT EXAMINATION.

On redirect examination the state court properly permitted the question, "Did you mean to tell Mr. F. [defendant's attorney] that G., or C., had a knife in her hand?" to afford an opportunity of correcting a mistake or inadvertence witness had made in testimony on cross-examination, the answer to the question being, "C. [deceased] didn't have no knife."

5. CRIMINAL LAW ☞366(4) — DECLARATION OF DECEASED HELD ADMISSIBLE AS RES GESTÆ.

On cross-examination of defendant's witness in a homicide case, court properly overruled an objection to the question, "Didn't deceased say to you, in the presence of defendant, at the time you separated them, that that was defendant's knife, and she took it away from her, and isn't it a fact that defendant didn't deny it?" since it related to the res gestæ.

6. CRIMINAL LAW ☞407(1)—STATEMENT OF DECEASED, MADE IN PRESENCE OF DEFENDANT, ADMISSIBLE.

In a homicide case, it was proper to permit state, on cross-examination of defendant's witness, to ask whether deceased did not say, in the presence of defendant at the time the witness separated them, that a knife had by deceased belonged to defendant, and that she took it away from her, and that defendant did not deny it, being of an inculpatory nature, made in the presence and hearing of defendant.

7. CRIMINAL LAW ☞1170½(2)—OVERRULING QUESTION HELD WITHOUT PREJUDICE IN VIEW OF ANSWER.

It was not prejudicial error to overrule an objection to a question asked the state concerning an inculpatory statement made in the presence and hearing of defendant, where witness answered that no such statement was made.

8. CRIMINAL LAW ☞696(3)—MOTION TO EXCLUDE ANSWER TO UNANSWERED QUESTION WITHOUT MERIT.

A motion to exclude answer to a question was without merit, where the question had not been answered.

9. CRIMINAL LAW ☞366(4)—EVIDENCE ADMISSIBLE AS RELATING TO RES GESTÆ.

In a homicide case, it was proper to permit the state to ask witness whether or not deceased had not said in the presence of accused, "You have cut me, and I could cut your throat, but I won't," inquiry relating to the res gestæ.

---

10. CRIMINAL LAW ⬳338(8)—NOT ERROR TO PERMIT WITNESS TO BE ASKED IF HE WAS NOT CALLED "SNAKE."

In a homicide case, court did not commit error in overruling an objection to the question, asked by the state of a witness, "They call you 'Snake,' don't they?" and in not excluding the answer, "Yes, sir," unless the question was asked in order to cast aspersion upon the witness and to humiliate him.

11. CRIMINAL LAW ⬳311, 570(2) — DEFENDANT PRESUMED SANE—INSANITY MUST BE PROVED BY PREPONDERANCE OF EVIDENCE.

Where it is clearly proven that the offense charged has been committed by the defendant, the law presumes she was sane at the time of the commission, in other words, the burden is on the state to prove beyond a reasonable doubt and to a moral certainty that the defendant committed the crime, and the law presumes every man to be sane, and imposes upon the defendant the burden of proving her plea of insanity by a preponderance of the evidence to the reasonable satisfaction of the jury, and a reasonable doubt of defendant's insanity raised by all the evidence does not authorize acquittal.

12. CRIMINAL LAW ⬳456, 1158(4)—WITNESSES MAY TESTIFY AS TO DEFENDANT'S SANITY —DECISION AS TO COMPETENCY OF OPINION WITNESSES NOT DISTURBED ON APPEAL.

Witnesses may express their opinions as to the sanity or insanity vel non of a defendant, but the witness must first be shown competent or qualified, and the question of the competency is for the court and not for the jury, and its decision will not be revised unless it clearly appears erroneous.

13. CRIMINAL LAW ⬳465—NONEXPERT WITNESS MUST BASE OPINION AS TO SANITY UPON PERSONAL KNOWLEDGE.

Nonexpert witnesses cannot give an opinion as to the sanity or insanity of the accused, based in whole or in part upon an abstract hypothetical question, but must base his opinion solely upon his own personal knowledge, observation, acquaintance, etc., with the individual inquired of, and must first state the facts claimed to show or indicate an abnormal condition of the mind, but such witness may give an opinion that the person inquired of was sane by first merely denying generally the existence of any facts showing an abnormal or unnatural state of mind, and without specifying any of such facts.

14. CRIMINAL LAW ⬳452(2)—NO SUFFICIENT PREDICATE LAID FOR OPINION AS TO INSANITY OF ACCUSED.

In a homicide case, witness did not lay a sufficient predicate to testify to the insanity of accused, where she simply testified that she had been intimately associated with accused for six months, and had known her for one or two years, etc.; no facts being testified to which would indicate any abnormal condition of accused's mind.

15. CRIMINAL LAW ⬳448(10) — QUESTION HELD TO CALL FOR A CONCLUSION.

While a witness may express an opinion as to the insanity of accused, court properly sus-

tained an objection to the question, "When she was talking about anything, would she talk with good sense?" since it called for a conclusion of the witness.

16. CRIMINAL LAW ⬳1170(4) — NO COMPLAINT OF EXCLUSION OF EVIDENCE SUBSEQUENTLY ADMITTED.

It was not prejudicial error to sustain an objection to a question which the witness subsequently answered in substance.

17. CRIMINAL LAW ⬳466—COURT ERRED IN NOT EXCLUDING ANSWER OF OPINION WITNESS.

It was error for the court in a homicide case, where witness was testifying as to the sanity of accused, not to exclude the answer, "I reckon so," made in response to question propounded by the state on cross-examination, "Well, she had sense enough to cook, didn't she?"

18. CRIMINAL LAW ⬳1186(4)—ERROR HELD TOO TRIVIAL TO CALL FOR REVERSAL.

In a homicide case, error of the court in not excluding the answer, "I reckon so," was not of such gravity as to work a reversal, not injuriously affecting any substantial right of the defendant under rule 45 (61 South. ix).

19. HOMICIDE ⬳179—COURT ERRED IN EXCLUDING TESTIMONY AS TO DEFENDANT'S SANITY.

In a homicide case, where defendant was attempting to prove insanity, and witness testified, "She would tear up her clothes sometimes," and in answer to the question by defendant, "New as well as old garments?" answered, "Yes, sir," the court erred in granting a motion of the state to exclude the last answer.

20. CRIMINAL LAW ⬳696(5) — SOLICITOR SHOULD INTERPOSE OBJECTION BEFORE ANSWER TO QUESTION.

Solicitor for state should interpose an objecton to a question before it is answered, and it is too late after the answer to move that the answer be excluded, where the answer is responsive to the question.

21. CRIMINAL LAW ⬳1170(4)—EXCLUSION OF EVIDENCE SUBSEQUENTLY ADMITTED NOT REVERSIBLE ERROR.

Conviction will not be reversed on account of the exclusion of an answer to a question, where the evidence so excluded was subsequently allowed to be introduced by the witness on redirect examination.

22. HOMICIDE ⬳171(2)—WITNESSES ⬳236 (1)—CONDITION OF SURROUNDINGS ADMISSIBLE—QUESTION WHETHER WITNESS WAS MARRIED HELD IMPROPER.

In a homicide case the condition of a bridge and the surroundings generally of the scene of the difficulty were important in order that the jury might more thoroughly understand all the facts, circumstances, and surroundings attending the difficulty and the corpus delicti, but fact as to whether or not witness was married man was immaterial.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

23. CRIMINAL LAW ☞829(1)—No ERROR IN REFUSING REQUESTED INSTRUCTIONS COVERED BY OTHER INSTRUCTIONS.

It was not error in a homicide case to refuse to give requested charges covered by charges given.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Georgia Russell was indicted for murder in the first degree, convicted of manslaughter in the first degree, and she appeals. Affirmed.

Certiorari denied 204 Ala. 626, 87 South. 227.

The charge was that defendant killed Claudie Jones by cutting her with a knife. The witnesses Gussie Lewis and Willie Austin testified that at times the defendant would act peculiarly; that she would curse, shut herself up in her room, and not let any one come in. Gussie Lewis was asked, "When that time came, how would she do, how would she talk?" and she answered, "She would just act fractious, and snap you up, and just act crazy." On motion of the state the words, "just act crazy," were stricken out. In answer to a question, the witness Austin answered that, "She wouldn't talk like she had good sense," which was stricken on motion of the state.

Farmer, Merrill & Farmer, of Dothan, for appellant.

The fact that the witness was known as "Snake" was immaterial, and its admission prejudicial. 39 Ala. 247, 84 Am. Dec. 782; 52 Ala. 318; 11 Ala. App. 15, 65 South. 444. The court erred in not admitting the evidence of Nora Douglas. 36 Ala. 514; 71 Ala. 397; 143 Ala. 28, 38 South. 919. This is also true of the evidence of the witness Sorie. Whether or not defendant had sense enough to cook was immaterial. 179 Ala. 339, 60 South. 815, Ann. Cas. 1915C, 888; 9 Ala. App. 164, 62 South. 388. Anything which tends to show insanity, or unsoundness of mind, was admissible. 181 Ala. 63, 61 South. 434. Court erred in excluding the expressions in the evidence of the witnesses Gussie Lewis and Willie Austin. 124 Ala. 562, 27 South. 481; 155 Ala. 178, 45 South. 678; 113 Ala. 43, 21 South. 356, 59 Am. St. Rep. 97; 82 Ala. 25, 2 South. 150; 177 Ala. 240, 59 South. 294; and authorities supra. Charge 7 should have been given. 59 Ala. 52. Charges 32 and 33 should have been given. 81 Ala. 577, 2 South. 854, 60 Am. Rep. 193.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Court was not in error in allowing to be shown that the witness was called "Snake."

72 South. 605; ante, p. 155, 82 South. 645. Counsel discuss other assignments of error relative to evidence, and criticize the cases cited by appellant, but they cite no further authority.

BRICKEN, P. J. The defendant, a woman, was indicted for murder in the first degree; was tried and convicted of manslaughter in the first degree, and was sentenced to imprisonment in the penitentiary for a term of five years. When arraigned the defendant pleaded (1) not guilty, and (2) not guilty by reason of insanity.

On this appeal it is insisted that the court in many instances erred in its rulings upon the admission and rejection of testimony. The refusal to give three special written charges requested by the defendant is also complained of as being error.

[1] The exceptions reserved to the rulings of the court upon the evidence will be here treated in the order in which they occurred upon the trial as shown by the transcript. The questions propounded by the state to witness Hawk upon redirect examination, to wit, "I will ask you if it is not a fact that Georgia Russell didn't cut Claudie after she fell," related to the res gestæ of the offense, and the objection interposed to this question by defendant was properly overruled.

[2, 3] The court did not err in overruling the objection of defendant to the question asked witness Ed Bryant by the state, "Did she [defendant] say anything about what she was going to do to Claudie [deceased]?" The purpose of this question was clearly to prove threats made by defendant against deceased, and the answer of the witness "Yes, sir; she said she was going to kill her," was responsive to the question, and was not subject to the motion to exclude same.

[4] On redirect examination by the state of the witness Ed Bryant, the court, over the objection of the defendant, permitted the question, "Did you mean to tell Mr. Farmer that Georgia, or Claudie, had a knife in her hand?" There was no error in this ruling, for the witness was thus afforded an opportunity of correcting a mistake or inadvertence he had made in his testimony on cross-examination. His answer to the question "Claudie (deceased) didn't have no knife," makes it clear that the question was proper, and the answer had the effect of removing the uncertainty of this witness' testimony on this point and of correcting the manifest mistake made by him in his testimony on cross-examination. The rule of evidence permitting a redirect examination of one's own witness is provided to meet just such conditions.

[5-7] On cross-examination of defendant's witness Wallace Cawthon, the state asked:

"Didn't deceased say to you in the presence of defendant at the time you separated them

that that was defendant's knife, and she took it away from her; and isn't it a fact that defendant didn't deny it?"

The defendant objected to the question, but the objection was clearly without merit for the reasons: (1) That it related to the res gestæ; and (2) that it was a statement of an inculpatory nature, made in the presence and hearing of defendant. Furthermore, the answer being, "No sir," rendered the question without prejudice, even if there was error in overruling the objection of defendant.

[8, 9] The next exception as shown by the record was to the action of the court in overruling defendant's objection to question asked of this same witness: "Don't you know that the blood that was on defendant came out of deceased?" The record clearly shows that, "This question was not answered by the witness," but, notwithstanding there was no answer to the question, the defendant made a motion to exclude the answer. A motion to exclude something that has not occurred during the trial is, of course, without merit. The further question by state to the same witness, "Didn't you hear deceased say to the defendant, 'You have cut me, and I could cut your throat, but I won't'?" was not subject to the objection interposed, as the inquiry related to the res gestæ. Moreover, it was rendered harmless by the answer of witness, who replied, "No, sir."

[10] The state asked witness Cawthon the following question: "They call you 'Snake,' don't they?" It is strenuously urged by defendant that the court committed error in overruling the objection interposed to this question, and in not excluding the answer, "Yes, sir." If the purpose of the question was to more thoroughly identify the witness, by proving he was usually called by the nickname referred to, it was competent, and the court below could properly predicate its ruling upon this theory. On the other hand, if the question was asked in order to cast aspersion upon the witness and to humiliate him before the jury, such course would be highly improper, and should not be indulged in by counsel or tolerated by the court. But we are not prepared to agree with counsel that the question and answer were susceptible of, or subject to, the criticisms urged by them. We do not see how this matter could have the effect, as insisted by them, that—

"It left open the argument to the jury that this witness could not be believed, or that the people who knew him would not believe him, because he was known as 'Snake,' and that the jury should not believe him for this reason."

It is true that since the days of the Garden of Eden the human race has entertained an antipathy for snakes, and that there pre-vails an undying enmity, an enmity of divine origin, between man in general and the venomous reptile known as a serpent or snake; but it is also equally true that oftentimes nicknames are applied or given to individuals without rhyme or reason, and without any reference whatever to the characteristics of the persons so nicknamed being like or of the same nature as that of the name applied. Certainly, it cannot be insisted that a jury would be authorized to discredit a witness or disbelieve his testimony because of his name, or, as for that matter, his nickname. The rules of evidence permit no such thing; to the contrary, they provide several means of impeaching a witness, unnecessary to enumerate here; but, as before stated, no rule of evidence exists which will authorize a jury to discard or to disbelieve the testimony of a witness because of his name without reference to the utter lack of euphony in the name, or how obnoxious it might be in its common acceptation. The principles of law cited by appellant's counsel sustaining the proposition that evidence in a case should be confined to the points in issue are too well settled to permit of discussion. We are of the opinion, however, that these principles are not in point here, and that the insistence that the admission of this evidence injuriously affected the substantial rights of the defendant is wholly without merit.

The remaining exceptions as shown by the record relate to the rulings of the court upon the evidence offered in connection with defendant's plea of "not guilty by reason of insanity."

[11] It may be here stated that where it is clearly proven that the offense charged has been committed by the defendant, the law presumes she was sane at the time of its commission; in other words, the burden is upon the state to prove beyond a reasonable doubt and to a moral certainty that the defendant committed the crime; and the law presumes every man to be sane. Williams v. State, 13 Ala. App. 133, 69 South. 376. The law imposes upon the defendant the burden of proving her plea by a preponderance of the evidence, to the reasonable satisfaction of the jury. McGhee v. State, 178 Ala. 4, 59 South. 573; Code 1907, § 7175. A reasonable doubt of the defendant's sanity, raised by all the evidence, does not authorize an acquittal. Martin v. State, 119 Ala. 1, 25 South. 255.

The writer of this opinion does not hesitate to say that the soundness of this last proposition appears very doubtful to him, but so far as this court is concerned it may be said that "the water has passed under the bridge," for in the face of the many decisions of the Supreme Court to this effect, we are without authority to hold otherwise. This proposition, however, appears to the

writer as being repugnant to the sound logic of the law, and as not being in harmony with settled analogies of criminal jurisprudence. To the contrary, the writer favors the view that although the law presumes sanity (Code 1907, § 7175), it also presumes innocence; that these presumptions are each disputable, and must be submitted to the jury, to be considered by them in connection with all the other evidence in the case; and that if the jury, after considering all the evidence in the case as well as the conflicting presumptions involved, entertain a reasonable doubt that the crime charged was committed by the accused while in a sane state of mind, he would be entitled to an acquittal. The eminent American text-writer, Mr. Bishop, entertained and expressed this view (2 Bish. Cr. Procedure, § 673), and the decisions of the highest courts of several states have so held. The lamented profound jurist Justice Somerville, of the Supreme Court of this state, announced that his individual opinion was in accord with this view, and he said in this connection, "This is the modern or strictly American doctrine." He adds, however, that the doctrine, though clear to his mind, finds but slight countenance among the best law-writers or adjudged cases in England. Boswell v. State, 63 Ala. 307, 35 Am. Rep. 20. The Boswell Case appears to be the first Alabama case which repudiated the ordinary rule of "reasonable doubt" as applicable to insanity cases. This case, it must be admitted, has been many times reaffirmed and cited with approval by the Supreme Court of this state, and seems to be sustained by the great weight of authorities generally.

[12] By vast numbers of decisions it is now well-settled law and practice that as to questions of insanity vel non, witnesses, whether expert or nonexpert, may express their opinions as to the sanity or insanity of a defendant on trial for crime. The witness, whether expert or not, must first be shown to be competent or qualified to give an opinion as to the sanity or insanity of the party inquired of. And the question as to the competency of the witness, whether expert or not, to give an opinion as to the sanity or insanity of the party inquired of is a question for the court, and not for the jury, and as to this question its decision as to competency will not be revised unless it clearly appears to be erroneous.

[13] In the case at bar, the testimony on this question was confined to that of nonexpert witnesses; and the rule is that a nonexpert witness cannot give an opinion as to the sanity or insanity of the accused, based in whole or in part upon an abstract hypothetical question, but must base his opinion solely upon his own personal knowledge, observation, acquaintance, etc., with the individual inquired of. Nonexpert witnesses, to give an opinion as to insanity of a party, must first state the facts claimed to show or indicate an abnormal condition of the mind; in other words, where a witness is introduced to prove the insanity of the accused, his opinion "must be preceded by the facts and circumstances upon which it is predicated" (Ford v. State, 71 Ala. 385, 397; Florey v. Florey, 24 Ala. 241; Powell v. State, 25 Ala. 21); but such witness may give an opinion that the person inquired of was sane, by first merely denying generally the existence of any facts showing an abnormal or unnatural state of mind, and without specifying any of such facts. Caddell v. State, 129 Ala. 57, 65, 30 South. 76.

[14] The defendant introduced witness Nora Douglass, who testified in substance that she knew defendant well, and had been intimately associated with her for six months; that she had known her one or two years, and that during her intimate association with her for six months she saw her nearly every day, and talked with her a great deal, and that these associations with defendant existed just before the difficulty, and just after that and up to the time of the difficulty. At this juncture of the evidence, the court sustained the objection of the state to the question: "Well, now, what was the state of her mind, in your judgment?" The court did not err in this ruling, for the reason that this witness had up to this time testified to no facts showing or tending to show or to indicate any abnormal condition of defendant's mind or any unusual conduct upon her part; and, as above stated, in order for a nonexpert witness to give an opinion as to the insanity of a party, the witness must first state the facts claimed to show or indicate an abnormal condition of the mind of the accused. The testimony developed at the time this question was asked simply showed an intimate acquaintance between witness and defendant, but no acts of the defendant of an unusual nature were shown, and no facts proven which it could be claimed to show or indicate any abnormal condition of defendant's mind. It follows that no sufficient predicate had been proven to authorize the witness to express her opinion as to the state of mind of the defendant, and to have permitted the witness to answer would have been an infraction of the rule hereinabove announced.

[15] Moreover, before the conclusion of the examination of this witness, she was permitted without objection to express her opinion as to the insanity of the accused, and did so testify that "defendant did not have a sound mind, in my judgment, sometimes." We think the court properly sustained the objection to the next question propounded to this same witness, to wit, "When she was

talking about anything, would she talk with good sense?" This question was objectionable as calling for the conclusion of the witness as to what it would take to constitute a person talking with good sense. And while it is true that a witness under the rule above announced may express an opinion as to the insanity of a person, it is not permissible to show a conclusion of the witness as was undertaken here.

[16-18] The court would not permit this same witness to answer the question, "Would she talk connectedly?" The error, if any, in sustaining the state's objection to this question was cured later by the witness being permitted to testify:

"In talking, she would talk about one subject, and before she finished, get on another, and before she finished get on another. * * * I would say to her, 'Let's go to such and such a place,' and she would just as likely tell me what she was to cook for the white folks as to answer my question at times."

This witness was permitted to testify, and did so testify:

"Defendant did not have a sound mind, in my judgment, sometimes; and those times were once a month."

The rulings of the court upon the evidence of this witness on cross-examination were free from any error of a reversible nature. We think the answer, "I reckon so," made in response to question propounded by the state, "Well, she had sense enough to cook, didn't she?" should have been excluded; but we do not think the error in overruling defendant's motion to exclude the answer is of such gravity, in view of all the other evidence, to work a reversal of this case. In fact it is clearly manifest that this ruling of the court did not injuriously affect any substantial right of the defendant (rule 45 [61 South. ix]), or that the defendant's case was prejudiced by such ruling to the extent of necessitating a reversal. It clearly appears from the record that after this witness had testified to facts relative to the conduct of defendant indicating the abnormal condition of defendant's mind, thereby qualifying herself to testify as to witness' opinion touching the insanity of defendant, she was permitted to so testify without objection.

[19-21] What has been said in discussing the rulings of the court upon the testimony of defendant's witness Nora Douglass is applicable also to the court's rulings upon the testimony of witness Kate Sorie. Among other facts describing the conduct of the accused, this witness stated, "She would tear up her clothes sometimes," and in answer to the question by defendant, "New as well as old garments?" she answered, "Yes, sir." The state then moved to exclude this answer, and the court granted the motion. This was error, for, aside from the fact of this testimony being admissible and relevant in order to show an abnormal condition of defendant's mind, the solicitor representing the state sat idly by and permitted the question to be propounded and the answer given, without interposing an objection as required by the elementary rules of evidence. The motion of the state, therefore, came too late, and for that reason also it should have been overruled. This error, however, cannot effect a reversal of this case, for the reason that the evidence so excluded was allowed to be introduced again by this witness on her redirect examination, the witness testifying without objection:

"In the winter of 1918 I made her some 'new clothes,' and she sat down in front of me and 'tore them up.'"

The exceptions reserved to the court's ruling upon the testimony of witness Gussie Lewis and Willie Austin are without merit.

The question propounded to witness George Cotton as shown by the record was unintelligible, but, aside from this objection, there was no error in sustaining the objection, as the question clearly called for illegal and incompetent testimony.

[22] The court committed no error in its rulings upon the testimony of Will Hawk, when examined by the state on rebuttal, as the condition of the bridge and the surroundings generally of the scene of the difficulty were important in order that the jury might more clearly understand all the facts, circumstances, and surroundings attending the difficulty and the corpus delicti. However, the fact as to whether or not this witness was a married man was immaterial to any of the issues involved upon the trial of this cause, and the court very properly sustained the objection to the question calling for this testimony.

[23] The court's oral charge to the jury in this case was very thorough, full, able, comprehensive, and fair, and in addition to the oral charge the court gave at the request of the defendant a large number of special written charges. It is insisted that the refusal of special written charges 7, 32, and 33 constitutes error. That there is no merit in this insistence is clear. Refused charge 7 was covered by given charge 10. The principles of law contained in refused charges 32 and 33 were fairly and substantially stated in given charges 36 and 37, and in addition thereto the oral charge of the court as shown on pages 19 and 20 of the record fully and fairly covers every proposition of law contained in these and other charges refused to defendant.

We have found no error of a reversible nature in the whole proceedings upon the trial of this case. We are of the opinion that the defendant has been accorded a fair and impartial trial, and that no ruling of the

court has injuriously affected her substantial rights.

The judgment of conviction of the lower court is therefore affirmed.

Affirmed.