307 So.2d 77

**Michael Lee DEAN**

**v.**

**STATE.**

**8 Div. 453.**

Court of Criminal Appeals of Alabama.

Jan. 21, 1975.

Frank J. Mizell, Jr., and Randolph B. Moore, III, Montgomery, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and George R. Stuart, III, Sp. Asst. Atty. Gen., Birmingham, for the State, for appellee.

certain homicides was not in force and effect under the laws of Alabama.

The Supreme Court of the United States, in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, decided on June 29, 1972, (before this alleged homicide), eliminated the death penalty in capital felony convictions imposed by Title 14, § 318, Code of Alabama 1940. This elimination was adjudicated by the Supreme Court of Alabama in Hubbard v. State, 290 Ala. 118, 274 So.2d 298; McCaghren v. State (Alabama Criminal Appeals, released April 11, 1974), 52 Ala.App. 509, 294 So.2d 756. This court held in a robbery case that capital punishment therefor had been eliminated. Jones v. State, 50 Ala.App. 62, 276 So.2d 647; Burt v. State (Alabama Criminal Appeals, released October 1, 1974), 54 Ala.App. 1, 304 So. 2d 243.

With this judicial elimination in mind, we now proceed to consider some of the statutory procedural requirements here contended to have force and effect in the instant case. We also address other contentions of appellant relative to asserted errors in this case.

SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant, (a non-indigent except as to a free transcript) represented at the nisi prius and here by employed but not the same counsel, was indicted for murder in the first degree and convicted of murder in the second degree with punishment fixed at twenty-five years in the penitentiary.

The alleged homicide occurred on December 2, 1972. The defendant was arraigned on September 11, 1973, at which time he plead not guilty and not guilty by reason of insanity. Trial began on September 24, 1973.

At the time of the alleged homicide, indictment and trial, capital punishment for

### I.

There was no operational field for Title 30, § 30, Code of Alabama 1940, relating to a special venire and drawing and summoning of such venire. The defendant did not stand indicted for a capital felony; observance of the statutory mandates of this section was not required.

### II.

The excusals of jurors in the presence of the defendant, as required in capital murder cases prior to *Furman*, did not obtain in the instant case. The trial court was authorized to grant excusals as in non-capital felonies. The mandates of Lassiter v. State, 36 Ala.App. 695, 63 So.2d 222; Smallwood v. State, 235 Ala. 425,

179 So. 217, 218; Waller v. State, 32 Ala. App. 586, 28 So.2d 815, cited by appellant and mandating excusals in the presence of the defendant were without force and effect.

We also note that special venires for trial of capital cases in Lauderdale County were abolished when this case was tried on September 24, 1973. Act No. 967, Vol. III, Acts of 1971, p. 1724, approved September 7, 1971. Supplement Title 13, § 125(48j), Code of Alabama 1940, p. 337.

Act No. 966, Acts of 1971, Vol. III, p. 1724, approved September 7, 1971, authorizes prospective jurors in capital cases to be excused without the presence of the defendant or his attorney. This act is applicable to the Circuit Court of Lauderdale County.

### III.

Appellant asserts that the inclusion of some persons, not shown in the record to have been drawn and summoned as part of the regular or special jury drawn for the week in which the appellant's capital case was set for trial, as a part of the jury venire for his trial was illegal, erroneous and deprived him of his constitutional rights of due process.

■ We are unable to find from the record that such asserted "inclusion" took place. Argument of counsel to the trial court of such inclusion is not evidence and cannot be considered in support of this contention of error.

### IV.

■ While the affidavit of Deputy Sheriff Bill Price does not make a positive and unequivocal statement that the firearm used in committing the alleged homicide was on the premises to be searched, we are of the opinion that the statute in its application to the issues in this case do not require such a positive and unequivocal statement.

It appears from the evidence that Officer Price went to the home of the defendant about 8:30 P.M., December 2, 1972, and there placed him under arrest for the unlawful killing of Jeffery Almon Watson.

The evidence further shows that at the time of the arrest, the defendant showed the officer two pistols which were in a drawer. The officer did not seize the pistols but left them as they were.

Deputy Price went forthwith, after making the arrest about 8:30 P.M., December 2, 1972, to a magistrate who issued a search warrant. The search warrant was executed about one hour later on the same night. (Tr. 74). The affidavit and search warrant are as follows:

"THE STATE OF ALABAMA          IN THE COUNTY COURT
"COUNTY OF LAUDERDALE

"Before me, R. Powell Duska, Judge of the Lauderdale County Court, in and for said State and County, personally appeared Bill Price, who being by me first duly sworn, deposes and says:

"My name is Bill Price, I am a deputy sheriff of Lauderdale County, Alabama, and have been for the past six years. I have probably (?) [sic] cause for believing that there is present in the home of Shannon Dean, Route Two Killen, Alabama, a firearm that killed Jeffery Almon Watson. Mr. Watson was killed tonight by being shot twice with what is thought at the present time to be a hand gun. Watson was at home when he was shot and made the statement to his father that Mike Dean shot him when he came back into the house, Mike Dean showed me and other deputies when he was arrested at his house later two pistols but did not say which gun, if any, fired the shots. We observed several other guns at the house when we made the arrest. Mr. Almon Watson, father of Jeffery Watson, observed a maroon car leaving his house after his son was shot. There was a maroon car sitting in the yard of Mike Dean when we arrived and the motor was still warm. I believe that a search of Mike Dean's house is necessary for the recovery of said murder weapon.

"Bill Price  (Signature)
"Bill Price

"Sworn to and subscribed before me this the 2nd day of December, 1972.

"R. Powell Duska
"Judge, Lauderdale County Court"

"THE STATE OF ALABAMA
"LAUDERDALE COUNTY

"TO ANY SHERIFF, CONSTABLE OR LAWFUL OFFICER OF THE
"STATE OF ALABAMA:

"Proof by affidavit having this day been made before me by Bill Price, Deputy Sheriff of Lauderdale County, Alabama, that there is probable cause for believing and does believe that there is located in the house of Mike Dean and Shannon Dean, a firearm that killed Jeffery Watson, a more particular description being unknown to your affiant.

"You are therefore commanded to make an immediate search of the residence of Mike Dean and Shannon Dean located At Route 2, Killen, Alabama, together with the maroon automobile located at said premises and if you find said weapon to bring it before the Lauderdale County Court in and for said State and County.

"R. Powell Duska  (Signature)
"Judge, Lauderdale County Court

"Executed this 2 day of December, 1972, in finding 2 pistols, one being a high standard Sentinel 22 Delux [sic] Ser. No. 2218989 and one being a Browning 32 Auto. Ser. No. 3403 B.

"M. M. Gibson, Sheriff

"Bill Price D. S."

It appears in the affidavit that the pistols so shown the deputy were on the premises of Michael Dean.

Title 15, § 107, Code of Alabama, reads as follows:

"§ 107. *When executed; magistrate must state time in warrant.*—It must be executed in the daytime, unless the affidavits state positively that the property is on the person or in the place to be searched, in which case it may be executed at any time of the day or night; and the magistrate issuing it must state in the warrant, according to the character of the affidavits, whether it is to be executed by day, or at any time of the day or night."

The property was under surveillance, and the object of the search and seizure was on the property, according to the affidavit. The statute does not require either of the pistols be identified as being the weapon which was used to kill the victim.

We hold that the affidavit shows that the seized weapons were on the premises and met the demands of § 107, supra.

The evidence of Deputy Price further shows that the arrest of the defendant and the search all took place at night. Moreover, the affidavit of Deputy Price shows that the homicide took place on the night the search warrant was obtained, namely, December 2, 1972.

The warrant issued by the magistrate commanded the officer "to make an *immediate* search of the residence of Michael Dean * * *" (emphasis added). The evidence shows that the search warrant was executed about 9:30 P.M. on the night of December 2, 1972. Execution of the search warrant was in obedience to the command of the magistrate for an "immediate search."

We believe this would be a reasonable construction of the affidavit and warrant in the instant case. Russell v. State, 53 Ala.App. 447, 301 So.2d 214, and cases there cited.

It is our opinion that the search at night was lawful and met the demands of § 107, supra.

## V.

It appears from the evidence that the victim was shot and mortally wounded at the back door of his home. One of the bullets penetrated his heart, and he died therefrom while en route to the hospital in an ambulance, which was called right after the shooting and conveyed him immediately to the hospital.

The father of the victim said he heard four shots and the screams of his wife; that he ran immediately through the house and out to the front porch; that he did not see his son at that time; that he heard his wife's screams, ran back through the house and saw his wife coming through the back door; that he went outside the house, where he found his son lying on the ground at the bottom of the steps; that he asked his son (the victim of the homicide) what had happened. His son replied, "Mike Dean shot me." The witness further testified that it took only a few seconds from the time he first heard the shots to get to the back, through the kitchen, and out the door where he met his wife, who was screaming. The accusatory statement of the deceased to his father was a part of the res gestae and an exception to the hearsay rule for that the victim lay mortally wounded. The accusation of the victim sprang out as a spontaneous declaration occurring at a time and place so near to the homicidal act as reasonably to preclude the idea of deliberation. The accusation may be regarded in effect as contemporaneous with the main fact. Stuart v. State, 244 Ala. 434, 14 So.2d 147. There is no error on part of the trial court in overruling the motion to suppress the victim's accusation. The motion was heard on voir dire away from the jury.

## VI.

The testimony in five is not reviewable for the reason stated in the preceding numerical section. Contention is made in this proposition (VI.) that the evidence was

not a dying declaration, and here, that it was not a part of the res gestae.

### VII. and XIV.

Appellant placed Dr. Spira, a competent psychiatrist, on the stand to prove the disturbed mental condition of the defendant. Upon evidence accordingly on direct examination, the defendant propounded questions and adduced answers as follows:

"Q. Did you also cause a series of either one or more, generally accepted psychiatric or psychological tests to be administered to Michael while he was confined at University Hospital to assist you in arriving at his emotion and mental condition?

"A. Yes, I asked a psychologist, Dr. Rafful, to examine him and I also had Mr. Dean carry out a psychiatrist test which was interpreted by a psychiatric service institution which I believe is located in California, where the test results are interpreted by a computer and returned to me.

"Q. That is the Roch Psychiatrict [sic] Institute that you submitted these tests to for interpretation?

"A. Yes, it was.

"Q. State whether or not the test results you received from the Roch Psychiatric Service Institute were basically consistent with the preliminary diagnosis you furnished me on December 19, 1972?

"A. Yes, sir.

"Q. Do you have a copy of the test results in your file, Doctor?

"A. I do, sir.

"Q. I believe in the second paragraph on the first page, third sentence says, and I quote it says . . AN OBJECTION IS NOTED BY THE STATE TO MR. HOLT READING FROM A LETTER WHICH IS NOT IN EVIDENCE.

"THE COURT: You can ask him about the part of the report in question.

"Mr. Holt continues:

"Q. State whether or not that report does not say that his test pattern, that he had a test pattern often associated with psychotic or pre-psychotic conditions?

"A. Yes sir.

"Q. Was that consistent with your preliminary diagnosis or opinion as to his mental condition?

"A. Yes, sir.

"Q. Is psychosis a mental illness or a mental disease, Doctor?

"A. Yes, sir. It is. It is a major mental illness."

It appears above that the defendant opened the line of questioning to Dr. Spira that related to the mental tests, which he used in evaluating the emotional and mental condition of the defendant.

■ The state had a right to cross examine Dr. Spira about the reports and their contents. Title 7, § 443, Code of Alabama 1940. The state also has a right to pursue the inquiry on cross examination although such inquiry might not be admissible as independent testimony. Bradley v. Jones, 282 Ala. 331, 211 So.2d 465(6); Lanier v. Branch Bank at Montgomery, 18 Ala. 625(4). The trial court was free of error in allowing the state to cross examine Dr. Spira about the reports submitted to him by a consulting psychologist, Dr. Raffel, and to read parts of Dr. Raffel's reports to the jury.

■ In proposition fourteen, supra, appellant asserts judicial error in permitting Dr. Spira, on cross examination, to testify as to the qualifications and training of Dr. Raffel, without personal knowledge of such training. Dr. Spira testified that he used the results of tests that Dr. Raffel furnished him. There was no error on the part of the court in permitting Dr. Spira to testify as to the qualifications and training of the absent Dr. Raffel. The jury

was entitled to know why Dr. Spira relied on Dr. Raffel's reports and also the basis of such reliance. The qualifications of Dr. Raffel as known or not known by Dr. Spira were relevant and a proper area of examination to enlighten the jury as to the weight and credibility of Dr. Spira's testimony.

We see no error on the part of the court in permitting Dr. Spira to testify as he did.

### VIII.

■ Ground sixty-four of appellant's motion for a new trial asserts that James Witt, a juror, while separated from his fellow jurors during the progress of the trial, communicated with his wife. Evidence was taken before the court on this segment of the motion for a new trial.

A succeeding ground of the motion (ground sixty-five) asserts that juror Dewey Wright communicated by hand signals with Grady Yancey, a grandfather of the defendant, during the progress of the trial. Evidence was also taken before the trial court on this phase of the motion.

It appears that the trial court heard considerable testimony on the merits of the two grounds and denied relief on both of them. We have reviewed the evidence and decline to disturb the ruling. We think it is not necessary to burden this opinion with a delineation of the evidence.

### IX.

■ During the course of the testimony, Chief of Police Killam, whose testimony described parts of the building where the homicide occurred and the locations of three bullet holes in the building through the use of a blackboard sketch, observed to the jury, "as you can see I drew an open face sketch of the crime scene." The defendant objected to the use of the words "crime scene" on the ground that such use invaded the province of the jury, and moved the court to instruct the jury to disregard that part of the witness' statement. The objection was overruled.

In the light of the evidence of this witness and evidence of the other witnesses that tended to establish a homicide for which the defendant was tried and convicted, we are unwilling to hold the ruling of the court was reversible error. If it was error, it was minuscule and without injury to the defendant. Supreme Court Rule 45.

### X.

■ The state called Dr. Roper as an expert witness. The evidence shows that the witness was a state toxicologist for two years immediately prior to the instant trial. He related his study and experience in the field as a toxicologist and prior to such association. He also stated his experience and training in firearms identifications. The trial court concluded that he was sufficiently trained and permitted his testimony as to wounds on the victim, cause of death, and identifying evidence relative to the pistol that was used. We will not disturb this ruling.

### XI. and XII.

We quote proposition eleven as follows:

"CIRCUMSTANTIAL EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF FELONY, UNLESS IT SHOWS ACCUSED'S GUILT BY A FULL MEASURE OF PROOF, AND EXCLUDES TO A MORAL CERTAINTY EVERY OTHER REASONABLE HYPOTHESIS EXCEPT THAT OF HIS GUILT."

Proposition twelve reads as follows:

"INSANITY IS A COMPLETE DEFENSE IN A CRIMINAL CASE."

■ The issue of circumstantial evidence raised by proposition eleven, supra, and the sufficiency to convict the defendant was addressed to the jury. We are unwilling to hold that the verdict of the jury should be vacated under the rule of circumstantial evidence.

Likewise the sanity vel non of the defendant raised by his plea was also a factual issue submitted to the judgment of the jury. We are unwilling to disturb the judgment on this plea.

### XIII.

▮ Appellant complains that the court erred in refusing, after the state objected, to admit in evidence a letter from the Florence Alabama Chief of Police to appellant and his father with reference to appellant's cooperation in regard to drug law enforcement in that area. There was ample evidence of appellant's participation in this program in law enforcement to which the letter would add little if any enlightenment. We see no prejudicial error in this ruling.

### XIV.

This proposition was considered, supra, in this opinion.

### XV.

▮ The state requested and the trial court gave written charge three as follows:

"3. I charge you Ladies and Gentlemen of the Jury that the burden of proof is upon the Defendant to establish his plea of not guilty by reason of insanity to the reasonable satisfaction of the Jury by a preponserance [sic] of the evidence."

This charge was approved in Thomas v. State, 207 Ala. 244, 92 So. 244 (1922). Excerpts from the court's oral charge (7 and 8) read as follows:

" 'Defendant says he is not guilty by reason of insanity, and on that plea the burden of proof rests with the defendant, to satisfy you by a preponderance of the testimony that at the time of the firing of the fatal shot he was of unsound mind.'

" 'Gentlemen, unless you should be satisfied by a preponderance of evidence in the case that the defendant was so affected mentally that he was unable to understand the quality of the act he was about to perform, or the probable conse-

quence of the act he was about to perform, or was unable to reflect upon that act because of an unsound condition of mind—I say, unless you are reasonably satisfied by a preponderance of the evidence that that was the condition, then the plea of insanity was not made out.' "

The Supreme Court speaking through Justice Sayre observed:

"The excerpt from the oral charge numbered in the petition 7 shows error. It puts too great a burden of proof on the defendant in respect of his plea of insanity. Code 1907, § 7175; James v. State, 167 Ala. 14, 52 So. 840; Prince v. State, 100 Ala. 144, 14 So. 409, 46 Am. St.Rep. 28. To require 'satisfaction,' this court has frequently held, is to require something more than 'reasonable satisfaction', as the statute prescribes.

"The same error was repeated in the forepart of the excerpt marked 8 in the petition. In the latter part of that excerpt, the court correctly stated the burden of proof. No doubt this state of the court's oral instruction was the result of mere inadvertence; but we cannot say how the jury were affected, and reversible error must be held to have resulted."

The case of Russell v. State, 17 Ala.App. 436, 87 So. 221, cert. den., 204 Ala. 626, 87 So. 227 (1920), supports charge three as being correct. This case was decided in 1920 when § 7175, Code of 1907, was in force and effect. This Code section and § 422, Title 15, Code of Alabama 1940, are the same.

This court in *Russell*, supra, observed:

" * * * The law imposes on the defendant the burden of proving her plea of insanity by a preponderance of the evidence, to the reasonable satisfaction of the jury. * * *"

The instant charge (3) uses the adjective "reasonable" as modifying the degree of satisfaction. The employment of the words, "by a preponderance of the evidence", comports with their use as approved in *Thomas* and *Russell*, supra.

We note that written charge A., record 27–A, given at the request of the defendant, comports with charge three, supra.

We see no error on part of the trial court in refusing to give a number of written charges requested by the defendant. These were either covered by the oral charge, written charges given at the request of the defendant, or were incorrect statements of law. Title 7, § 273, Code of Alabama 1940.

We conclude that the judgment from which this appeal emanates should be, and it is hereby affirmed.

The foregoing opinion was prepared by the Hon. Bowen W. Simmons, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Affirmed.

All the Judges concur.