BOWEN W. SIMMONS, Supernumerary Circuit Judge.
Jury and verdict finding defendant guilty of robbery with punishment fixed at twenty-five years imprisonment. Judgment therefor, and this appeal therefrom. Appellant was an indigent at nisi prius and at the time of appeal.
I
It appears that a special venire was drawn and summoned to try appellant-defendant. The trial court, on May IS, 1975, heard defendant’s motion in camera that he not be tried under the special venire because some of the jurors were excused by the court without the presence of defendant, his knowledge, or consent, or that of his counsel. Defendant further alleged that the excusáis denied him the right as a part of this trial to know facts on which the excuses were based, to the end that he could be heard with regard thereto. He cites Title 30, Sections 5, 63, and 64, Code of Alabama 1940, as amended, “and the case law applicable thereto.”
The trial court, after hearing evidence with respect to the motion, overruled it. We will not recite the excuses given the court by the excused jurors. Suffice it to say that the excuses in the judgment of the court were meritorious.
We prefer to rely on our decisions of Usrey v. State, 54 Ala.App. 448, 309 So.2d 485 (1974); Dean v. State, 54 Ala.App. 270, 307 So.2d 77 (1975); and Fisher v. State, 57 Ala.App. —, 328 So.2d 311, released January 20, 1976. In all these cases we had in mind the effect of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), on our statutes and case law relating to special venires in capital cases and the excusáis of jurors in such cases when the defendant was not present. In both Usrey and Dean, we held that a special venire, in view of Furman, was no longer necessary or required, and that ex-cusáis of jurors, when the defendant was not present were permissible. When the opinions in Usrey and Dean were released, we did not have under consideration Bymum v. State, 294 Ala. 78, 312 So.2d 52 (released March 6, 1975).
In Fisher, supra, this court had under consideration the effect of Furman on striking a jury to try a rape case in Madison County.
Scott here contends that the trial court committed error in refusing to allow him to strike a jury from forty-eight veniremen. We quote Section 1 of the Fisher opinion, as follows:
“I
“Counsel for appellant ably and vigorously asserted the rights of his client both in the trial court and here on appeal. Counsel contends that the trial court erred in refusing to allow the appellant to strike a jury from forty-eight veniremen.
“Act No. 532, Acts of Alabama 1969, approved August 21, 1969 [Title 13, § 125 (90h) 1973 Cum.Supp., Code of Alabama, Recompiled 1958] provides that in the Twenty-third Judicial Circuit, a de *761 fendant, ‘. . .in capital felony cases shall be entitled to strike from a list of not less than forty-eight competent jurors . . . .’
“The appellant challenges the trial court’s ruling that capital felonies are now to be considered non-capital felonies since Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Appellant’s challenge of the venire is based upon the recent ruling of the Alabama Supreme Court in Ex parte Bynum, Jr., 294 Ala. 78, 312 So.2d 52 (1975). There the Court held that ‘capital offenses’ still exist in Alabama stating, The only effect of Furman was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment.’ “Contrary to the broad language employed by the Supreme Court in Bynum, we are of the opinion that the Court was addressing itself solely to the question of bail. The purpose for a special venire in ‘capital cases’ was to give a defendant, on trial for his life, an additional safeguard not given to those where only their liberty was at stake. At the time Act No. 532, supra, and Title 30, § 63, Code of Alabama 1940, were enacted, the only distinction between ‘capital’ and ‘non-capital’ cases was the possible imposition of the death penalty. Since the imposition of the death penalty has been suspended, there is no rational jusitification for a special venire in a case formerly classified as ‘capital’ where the maximum punishment is now the same as in a ‘non-capital’ case.
“Should the legislature ever enact a death penalty statute which meets all the constitutional tests for validity, then such special venire statutes would again become applicable, in our opinion. We do not believe the Alabama Supreme Court intended that its reasoning in the Bynum decision should be extended to require a special venire in cases where the death penalty cannot be imposed.”
We think our pronouncements in Fisher, supra, have application to the instant ruling of the court with respect to excusáis; also, sustain our holding in Usrey and Dean.
The trial court was free of error in denying defendant’s motion not to be tried by the special venire because excusáis therefrom were granted contrary to law as pronounced in Lassiter v. State, 36 Ala.App. 695, 63 So.2d 222(1); Draper v. State, 250 Ala. 679, 36 So.2d 73(1,2); Hall v. State, 250 Ala. 681, 36 So.2d 74.
II
Appellant-defendant next asserts that the search of a taxi-cab, which he had boarded as a fare-paying passenger, was illegal because the officers making the search did not have a search warrant; hence, the fruits of the search (money) were inadmissible in evidence. Motion to suppress the evidence heard in camera was overruled.
It appears from the evidence on the motion to suppress that a police officer of the City of Selma, John Etheredge, not on active duty at the time, was passing the scene, and was apprised of the alleged robbery. The victim gave him a description of the robber who confronted the victim, and in about five to ten minutes, and about one block distant, his attention was directed to a taxi-cab in which defendant and one Aaron were hurriedly entering for transportation to another point. He intercepted the departure, being of the opinion that one of the persons met the description in dress, personal size, and features which the victim had given him. Soon after the interception, two other police officers appeared on the scene of the interception, and engaged in the detention of the two persons who had entered the taxi-cab, and both of them were alternately placed in the police car to be transported to the scene of the robbery, there to be viewed by the victim.
Officer John M. Etheredge, the one first on the scene, testified he observed, after *762 the cab was stopped, that the two male occupants, supra, appeared to be real nervous; that they were stooped over in the cab and “appeared to be trying to hide something—not defendant, but the other one.” Officer Stokes, who came up in the patrol car, asked Aaron, the occupant of the cab, along with defendant, to step out of the cab; that as he did so, he brought his leg up, and the seat came up from his weight, “I can’t say how much it was, but money fell out from under the seat,” and “money fell out on the floor.” They then put both occupants in the police car. Officer Etheredge also testified:
“All right. When they put him in the patrol car, I told Officer Stokes to help me pull the seat up, to see if anything else was under the seat. When we went to pull the seat up, before we did that, money was hanging out from under the seat down towards the floorboard. It was all hung up. We pulled the seat up and it was a large amount of money on my side where Aaron was and there was money on the other side where Scott was.”
The testimony of Officer Stokes with respect to the money tended to support that of Officer Etheredge.
In view of short time element (five to ten minutes) between the robbery and the hurried entry of Aaron and defendant into the cab, the similarity of clothing worn by the two to that the victim gave to Officer Etheredge as to one of them, their posture in the cab, and their apparent nervousness, together with the quantity of money found in the cab, we hold that the officers had probable cause to believe that Scott was the robber, and that Aaron was also implicated.
Neither are we convinced that the seizure of the money, or any part of it, was the product of an illegal search. Part of the money was in plain view, according to Officer Etheredge, as Aaron stepped out of the taxi and tilted the seat. Some of the money fell on the floor. The rest of the money was discovered when the officers lifted the seat up. For legal purposes, we think all of the seized money was in plain view, and its seizure was lawful, and not unreasonable. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067.
We think that it would be unreasonable to hold that the officer was forbidden under the law to lift the tilted seat and see where the protruding and fallen money came from. This procedure was not unreasonable or unlawful. None of the recovered money was forbidden fruit of an unlawful search.
The judgment is affirmed addendum.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under Section 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
Affirmed.
All the Judges concur.