199 So. 900

### SOWELL v. STATE.

#### 4 Div. 624.

Court of Appeals of Alabama.
Jan. 21, 1941.

Ralph A. Clark, of Andalusia, for appellant.

Thos. S. Lawson, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

Under an indictment for murder in the first degree, the appellant was convicted of murder in the second degree. He killed his father-in-law and at his trial pleaded self-defense.

Dying declarations of the deceased and testimony of the two eyewitnesses to the affray were the only evidence for the State as to the events at the time of the tragedy. These two witnesses were the appellant's wife and her mother, wife of the deceased. The testimony of these two witnesses and the dying declarations of the deceased strongly supported the charge of first degree murder. So the potent effect of such evidence at the trial, especially of the two living State's witnesses, against the appellant is readily manifest. Admittedly, it was the force of such evidence which produced his conviction, for, without it, little else was proved for the State.

It may be said, for the purpose of this discussion, that the evidence for the defendant (appellant) tended to sustain his plea of self-defense. He and his mother were the only eyewitnesses to the difficulty testifying in his behalf at said trial.

By various questions propounded on cross-examination to the said two State's witnesses, elicitation was sought by the defendant of evidence of hostile bias and existing bad feeling of said witnesses toward the defendant. Other questions sought to show that the deceased and defendant were on bad terms. The trial court sustained—and in our opinion, erroneously—the State's objections to these questions. Exceptions to this action of the court were duly reserved, and the propriety of said rulings is one of the controlling insistences of error on this appeal.

Generally, anything which tends to show bias or inclines the witness to swear against a party is relevant for impeachment. Louisville & N. R. Co. v. Courson, 234 Ala. 273, 174 So. 474, 476; Nelson v. State, 11 Ala.App. 221, 65 So. 844; Pelham v. State, 22 Ala.App. 529, 530, 117 So. 497; Byrd v. State, 17 Ala.App. 301, 302, 84 So. 777.

Hostile feeling shown to be malignant, reflects greater discredit to the witness than that generated by a sudden quarrel. So, proper inquiry is allowed to test the *extent* of the hostility of such witness. Legitimate cross-examination to elicit such proof is proper. Fincher v. State, 58 Ala. 215, 220.

Upon such inquiry, *any circumstance* which might reasonably show bias or hostility is admissible upon cross-examination for consideration of the jury. 2 Wigmore on Evidence, 2nd Ed., Sections 948, 949, 950. This principle was skilfully dealt with by Mr. Justice Thomas of our Supreme Court in Adler v. Miller, 218 Ala. 674, 679, 120 So. 153, and excellently restated by Mr. Chief Justice Gardner of that court in Louisville & N. R. Co. v. Martin, 198 So. 141, 144.[1] As so well set forth in these cases (quoting Wigmore, supra, Section 949, p. 332): "The range of external circumstances from which probable [probably] bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place."

It is also a part of our statute law that every party has the right of cross-examination, *thorough* and *sifting,* of the witnesses who testify against him. Code 1923, Section 7731.

This court, after a careful and studious scrutiny of the present record, is convinced that the sustaining of the State's

objections to certain questions, propounded by defendant to the State's said two witnesses, was not in accordance with the foregoing authorities, and that substantial error intervened to the prejudice of the defendant.

The following exemplify the instances where the cross-examination of said witnesses was too narrowly limited:

After having testified that there was no ill feeling because of the defendant's marriage to their daughter, the mother-in-law of defendant (wife of deceased and mother of defendant's wife) was asked, upon cross-examination: "Q. And isn't it a fact that you carried your daughter down to your home when the child was born and you and your husband refused to let Cecil visit down there at all?"

██ Using the authorities hereinabove as our guide, we think the evidence, or "circumstance", sought to be shown by this type of question, was proper to prove the hostile feeling of the witness, the malignancy and extent thereof. Appropriate here, also, is the observation in Section 950, p. 336, Wigmore, supra: "The only question is whether from the conduct or language a palpable and more or less fixed hostility (to one party) or sympathy (for the other) is inferable." ·

And it cannot be said that such question was rendered illegal by the reference therein to her husband, the deceased. For, aside from tending to show a circumstance from which hostility of the witness may be inferred, it has been held that legitimate inquiry may be made as to whether the defendant and deceased were on good or bad terms. Cook v. State, 5 Ala.App. 11, 23, 59 So. 519. Especially are we so impressed since the dying declarations of the deceased in evidence tended to show that he was shot without cause, whereas the defendant, for such shooting, claimed self-defense.

██ The daughter of deceased (wife of defendant) gave testimony the tendency of which was that her father was killed without cause, when there was *no* bad feeling existing between him and the defendant. Upon cross-examination of this witness, the defendant propounded certain questions seeking to impeach her testimony on this point, answer to which, we think, should have been, but was not, allowed by the court. We specify the following as instances:

"Q. About six weeks before the shooting, did you tell Cecil Sowell there at your home one night, your husband Cecil there at your home, nobody else being present, for him to leave and go stay with his mother to keep from having trouble with your father?"

"Q. Did·you tell Cecil about two weeks before this difficulty, at a time when you found out Cecil had purchased some supplies for his mother, and there at your home, did you tell Cecil then and there for him not to let your father know about that? If he did he would have serious trouble with him?"

"Q. On one occasion when she visited you, prior to the difficulty, did you tell Rachael Peacock at your mother's home in discussing Cecil and the baby that it made your people mad for him to come see you and the baby and that he couldn't come down there?"

"Q. And in that same conversation and at that time, did you tell Mrs. Peacock that for some reason your family hated Mrs. Franklin and took the spite out on Cecil?"

If the statutory right of a "thorough" and "sifting" cross-examination is to be preserved to a party and ·decisions upon the subject construed with practical reason, in our view, such questions were clearly within the legitimate scope of cross-examination of an adverse witness, the evident purpose of which was to impeach her direct testimony on a very important inquiry, i. e. the feeling of the parties to the fatal encounter and who brought it on; or, as expressed in Cook v. State, supra, 5 Ala.App. page 23, 59 So. page 523, "relevant on the question as to whether the deceased and the defendant were on good or bad terms and as to whether the deceased or the defendant had a motive for killing the other. Underhill on Criminal Evidence, § 90, p. 167."

The jury was denied these illuminating facts, which, in our opinion, were most material in determining the respective contentions of the parties in the case.

██ Upon further cross-examination by the defendant's counsel, the daughter of deceased (wife of defendant) was asked, by way of impeachment of her testimony upon trial as to the fatal difficulty, if she had not made previous contradictory statements, such as, "Daddy didn't have any business down there jumping on Cecil like he did." Such a question and others of like character were, if for no other purpose, proper to test the credibility of said witness regarding her testimony on direct

examination, wherein she asserted the faultless conduct of her father, the deceased, in the fatal affray.

We are cognizant of the principle that the range of cross-examination is within the discretion of the trial court and unless it clearly appears that error intervened to the substantial injury of the adverse party the ruling at nisi prius will not be disturbed upon appeal. We are forced to the conclusion, however, that such injury is clearly manifest. Without the testimony of the mother-in-law and wife of defendant, there was scant evidence for the State. Their testimony was most damaging to him. The extent to which a witness may properly be cross-examined as to collateral circumstances tending to prove bias or interest, etc., depends in some instances—and clearly here, in our opinion—upon the importance of such testimony, and whether such testimony is of a nature to be seriously affected by prejudice, bias, hostility, or interest. Louisville & N. R. Co. v. Martin, supra, 240 Ala. 124, 198 So. page 147; 74 A.L.R. note, page 1161.

The other insistences of error are without merit. The fact that the dying declarations were made some days or weeks prior to the death of deceased did not render them incompetent. Death need not ensue immediately in order to render such evidence admissible. Boulden v. State, 102 Ala. 78, 84, 15 So. 341; Reynolds v. State, 68 Ala. 502.

The case was forcefully presented by skillful counsel for the prosecution and ably presided over by the learned trial judge, but, on account of the abridgement of the defendant's right of cross-examination of the two important State's witnesses to the substantial injury of said defendant, dealt with hereinabove, we conclude that the cause should be retried.

Reversed and remanded.