This is an appeal from a conviction of robbery and a sentence of fifteen years imprisonment in the penitentiary.
According to the testimony of Ella Mae Monroe, the owner of Monroe Grill, in Birmingham, she was robbed about midnight on a Saturday night in July, 1974, while the grill or store was open to the public and she was in charge. Soon after appellant arrived, a young man, later identified as Johnny Cobb, entered the store carrying a shotgun. An exchange of words ensued between the owner of the store and the man carrying a gun. The owner attempted to secure a shotgun kept behind the counter. Cobb told Proctor to get the gun. Proctor turned and grabbed the shotgun, grabbing it at about the same time as the owner. They scuffled, and Cobb, was hitting her at the same time with the shotgun he had. According to the witness, one hundred and twenty-five dollars was taken from the store.
That defendant participated in the robbery was corroborated to some extent by the testimony of Officers Howard Von Hagle and Fred Dunn, who arrived before appellant left the scene. They said he was standing in the doorway of the grill holding a shotgun.
Defendant took the stand and testified that he was present on the occasion involved, but he denied that he participated in the robbery and said that he never had a gun in his hand.
The circumstances, including the testimony of defendant, give rise to some doubt as to defendant's guilt, but assuming the correctness of the testimony of the victim and the officers, there can be no doubt that a jury question as to the guilt of defendant was presented, and appellant makes no contention to the contrary.
Appellant asserts that the "primary issue" on this appeal is "whether the offense of robbery is a capital felony thus entitling a defendant during jury selection to strike from a list of a minimum of thirty-six jurors." Before the process of selecting a jury commenced, defendant requested that the jury be selected (stricken) from a list of thirty-six, instead of twenty-four, jurors. His request was not granted, and the parties were required to strike from a list of twenty-four jurors. To this action, defendant reserved an exception.
The parties are in agreement that the governing statutory provisions are Code of Alabama 1940, Recomp. 1958, Appendix §§ 713-726, applicable to jury trials in Jefferson County. It is provided therein that in the selection of a jury, the parties are entitled *Page 830 
to strike from a list of twenty-four jurors, but that in capital felonies they shall strike from a list of thirty-six jurors. Appellant argues that notwithstanding Furman v.Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), rendering ineffective the death penalty in a robbery case, reference statute as to selecting a jury in Jefferson County requires that in a case designated by statutory law in Alabama as a capital case defendant is entitled to strike from thirty-six jurors.
Appellant relies upon Ex parte Bynum, 294 Ala. 78,312 So.2d 52 (1975), and Ex parte Carlisle, 295 Ala. ___, 326 So.2d 776
(1976). In each of the cited cases the question before the court was the effect of Furman upon the right of defendant to bail in cases in which, prior to Furman, defendant could suffer the death penalty. We need not discuss in detail the rationale of the decisions in the cited cases, as it is clear that a different policy would be involved as to the effect of Furman
upon the right of a defendant to bail and its effect upon his rights relative to the selection of the personnel that compose a jury to try his case. The cases cited by appellant are not inconsonant with Dean v. State, 54 Ala. App. 270, 307 So.2d 77
(1975) and Usrey v. State, 54 Ala. App. 448, 309 So.2d 485, cert. denied 293 Ala. 776, 309 So.2d 489 (1975). In Dean, in a first degree murder case permitting the death penalty prior toFurman, it was held:
 "The defendant did not stand indicted for a capital felony; observance of the statutory mandates of this section [relative to a special venire in capital cases] was not required."
In Usrey, the principle was reaffirmed that statutes requiring a special venire in cases in which capital punishment could be imposed, but for Furman, no longer apply. The special considerations relative to the right of a defendant to bail are not involved in this case. Consistency with Dean and Usrey, and with the reasons prompting the decisions therein, requires a determination that the trial court was correct in limiting the parties to a list of twenty-four jurors from which they were to select a jury. Fisher v. State (1976) 57 Ala. App. ___,328 So.2d 311, cert. denied 295 Ala. ___, 328 So.2d 321.
Appellant contends that the trial court unduly restricted defendant in its cross-examination of witnesses in two particulars: (1) in its effect to show bias, interest, prejudice, or partiality of the principle witness for the prosecution, Ella Monroe, and (2) in his efforts to show a similar attitude or feeling on the part of two of the police officers.
Code of Alabama 1940, Title 7, Section 443, provides:
 ". . . [R]ight of cross-examination thorough and sifting, belongs to every party as to the witnesses called against him."
Where a witness' testimony is of major importance and is strongly adverse to the party against whom he has testified, the usual discretion of a trial court has a narrow range, and it generally is required to allow proof of any important fact indicating bias of the witness. Green v. State, 258 Ala. 471,64 So.2d 84; Sowell v. State, 30 Ala. App. 18, 199 So. 900. InWells v. State, 292 Ala. 256, 292 So.2d 471, it was held:
 ". . . [W]here the witness' testimony is important to the determination of the issues being tried, there is little, if any, discretion in the trial judge to disallow cross-examination on matters which tend to indicate the bias of the witness."
Appellant commences his argument that there was undue restriction upon his cross-examination of Monroe by reciting the following lines from the record:
 "Q. All right. Now, did you not at the preliminary hearing indicate Cobb as the *Page 831 
one that initially struggled with you over the gun?
"A. Struggled with me over the gun —
"MR. PENNINGTON: Your Honor, we object to this.
"THE COURT: Sustained."
The portion of the record just quoted was on re-cross examination of the witness in which, for two pages of the record, counsel for defendant interrogated her as to her testimony at the preliminary hearing, which interrogation included the following:
 "Q. Mrs. Monroe, I will ask you whether you said this or this in substance at the preliminary hearing, that Cobb was the one that struggled with the gun. Did you testify to that, that Johnny Cobb, and not Thomas Proctor, was the one?
 "A. No, I didn't say that. I said that Cobb had the shotgun and that he was struggling with my shotgun. (Indicating.)
 "Q. All right. Now, I am asking when you were first asked by the assistant or the deputy district attorney, yes or no, did you or did you not testify initially at the preliminary hearing that Cobb was the one that struggled with you with the gun? Did you or did you not testify to that?
"A. No.
After cross-examining the witness as to her testimony on the preliminary hearing, counsel proceeded to interrogate her as to what she had said in a telephone conversation with defendant's mother, and counsel referred to previous testimony on cross-examination relative to the same telephone conversation. As a part of his argument, appellant quotes from the record:
 "Q. Well now, did you or did you not also tell her in the same conversation that, well, I am not sure if he was involved, but I tell you what, if he gets out of this, I am going to kill him or have him killed? Answer yes or no.
 "MR. PENNINGTON: Now, your Honor, he has gone over this, and this is repetitious.
"THE COURT: Do you have anything new?"
During previous cross-examination of the witness, questions were asked and answers given as follows:
 "Q. Have you also made the statement that if you didn't get Thomas Proctor in the courtroom, you were going to see that he was killed when he got out of the courtroom?
"A. No, sir. I haven't made that statement either.
"Q. You haven't said anything like that to anyone?
"A. No, sir.
 "Q. And as a matter of fact, didn't you say that to his mother?
"A. I didn't tell his mother that."
From the foregoing quotations from the record, it can be seen, we think, that whatever restrictions were placed upon defendant in cross-examining the particular witness were restrictions against asking repetitious questions. The right to a thorough and sifting cross-examination does not entitle a party to repeat questions that have already been definitely and fully answered. Lloyd v. State, 53 Ala. App. 730, 304 So.2d 232. No special circumstance appears that would require an exception in this case to the general rule in this respect.
In an effort to show bias upon the part of the police officers who testified for the State, counsel for defendant attempted to show or imply, by questions propounded to one of them, that defendant was beaten when placed under arrest. The court at first sustained objections of the State to *Page 832 
such questions. Thereafter the following occurred:
 "THE COURT: All right now, before we bring the jury back in, Mr. Bryan, if you want to do it, I will give you the opportunity to call the witness back to testify as to whether or not he kicked him.
 "Do you want to recall him for the purpose of asking him whether he kicked him or hit him or whatever you want to do?
"MR. BRYAN: No.
 "THE COURT: Well, I think that I was probably mistaken on that on the question of bias. It is probably admissible. He is out there if you would like to call him back.
 "MR. BRYAN: No, your Honor. In view of what has transpired during lunch, I don't believe so.
 "THE COURT: Well, I was going to allow you to do it to show bias.
 "MR. BRYAN: Well, no, your Honor, but we do have a stipulation."
The quoted action of the court purged the record of any error in previous action of the court in not allowing defendant to attempt to show bias on the part of the officers by showing violence to defendant at the time of his arrest.
We find no error in the record prejudicial to defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.