[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 322 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 323 
The defendant was indicted and convicted for perjury. Alabama Code Section 13-5-111 (1975). The trial court fixed his punishment at three years in the State penitentiary.
 I
To sustain a conviction for perjury there must be testimony of two witnesses to the corpus delicti or one witness with strong corroborative evidence. Ex parte Oglesby, 337 So.2d 381
(Ala. 1976); Murry v. State, 367 So.2d 985 (Ala.Cr.App. 1978), cert. denied, 367 So.2d 989 (Ala. 1979). The defendant maintains that the State failed to meet this burden of proof. We disagree.
Prior to his indictment, the defendant and his wife were the plaintiffs in a civil action for slander against several defendants, including M.M. Kennedy, Jr., the State's key witness here. The indictment charges the defendant with giving perjured testimony at a sworn deposition concerning this civil action. The indictment specifically charges the defendant with falsely swearing at his deposition on November 2, 1978, that he had not had a telephone conversation with Kennedy on July 21, 1978, in which nine tapes, seventy-five thousand dollars and certain other matters were discussed, "the matters so sworn to being material, and the oath of the said Thomas Randall Watson in relation to such matters being willfully and corruptly false."
M.M. Kennedy, Jr. testified that a telephone conversation between himself, Thomas Andrews and the defendant occurred on July 21, 1978, at approximately 3:15 P.M.:
 "The substance of the conversation was that I was to supply seventy-five thousand dollars to Randall Watson and a bill of sale for a black four wheel drive pickup truck in return for nine tapes which he had of conversations between me and his wife, as well as some pictures."
Kennedy stated that the defendant had informed him that he would deliver a tape recording "of the same nature" to Kennedy's wife, along with pictures of Kennedy and the defendant's wife together, if Kennedy *Page 324 
did not produce the seventy-five thousand dollars and the bill of sale for the truck. Kennedy allowed state law enforcement agents to record the July 21st telephone conversation.
Sergeant Gene Mitchell of the Department of Public Safety was present when a telephone conversation between the defendant, Thomas Andrews and Kennedy was recorded shortly after 3:00 P.M. at Kennedy's house on July 21st. Sergeant Mitchell testified that he and Kennedy listened to the tape at the conclusion of the conversation, and that he could identify each voice in the recording. Mitchell further stated that Ms. Drew Nunnally, a stenographer for the Attorney General's Office, was present on two occasions when he and Kennedy listened to the July 21st tape, and that Ms. Nunnally fully and accurately transcribed the entire recording. This tape was played in the presence of the jury, and, each member of the jury was furnished a transcript of the conversation.
Mrs. Betty J. Maurer was a court reporter. On November 2, 1978, Mrs. Maurer, in her capacity as notary public, placed the defendant under oath and took his deposition at the Monroe County Courthouse. Mrs. Maurer transcribed the entire deposition and read pertinent parts of it into evidence. In the deposition the defendant absolutely denied that he had a telephone conversation with Kennedy on July 21, 1978: "I haven't talked to him at all." The defendant denied discussing with Kennedy each particular portion of the conversation alleged in the indictment. At the conclusion of Mrs. Maurer's testimony the State rested its case. The defendant's motion to exclude the evidence was overruled.
We find the State's evidence sufficient to prove beyond any reasonable doubt that the defendant is guilty of perjury. The defendant swore under oath at his November 2, 1978, deposition that he had had no telephone conversation whatsoever with Kennedy on July 21, 1978. To question after question in his deposition the defendant swore that he had not discussed any of the matters with Kennedy which are averred in the present indictment and which appear in the tape recording of the conversation.
The falsity of the defendant's sworn testimony is proved through M.M. Kennedy, Jr., a witness to the corpus delicti of perjury, who testified that the July 21st conversation did occur and that each particular matter averred in the indictment as the substance of the conversation was discussed between the defendant and himself. A witness to the corpus delicti of perjury is a witness who has independent knowledge of the facts to which the defendant has sworn and who testifies, based on that independent knowledge, that the defendant has perjured himself. Ex parte Oglesby, 337 So.2d at 384.
Although there is no second witness to the corpus delicti, Kennedy's testimony is strongly corroborated. Sergeant Gene Mitchell testified without objection on direct examination that he was present when the July 21st telephone conversation between Kennedy, Andrews and the defendant was recorded. Also without objection, Mitchell testified that the three voices in the taped conversation were those of Kennedy, Andrews and the defendant.
Sergeant Mitchell admitted on his voir dire examination by defense counsel that he could not identify the voices on the tape recording through his own independent knowledge and that his identification of the voices was based on hearsay. However, the defendant made no mention to exclude Sergeant Mitchell's testimony identifying the voices. No motion to exclude was made, and no questions were proffered concerning Sergeant Mitchell's voice identifications during his cross examination in the presence of the jury. Although the defendant argues that the tape recording should not have been admitted into evidence because the voices on the recording were never properly identified, we must disagree.
To preserve error there must be a timely and appropriate objection prior to the witness's answer to a question or a motion to exclude the answer. Jones v. *Page 325 State, 52 Ala. App. 184, 290 So.2d 251 (1974). Where no objection to a question is made, an answer responsive to the question is not open to objection or motion to exclude. Ayersv. State, 48 Ala. App. 743, 267 So.2d 533 (1972). Ordinarily, a witness's testimony becomes legal evidence if it is received without objection. Wilson v. State, 52 Ala. App. 680,296 So.2d 774, cert. denied, 292 Ala. 759, 296 So.2d 778, cert. denied,419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974). Hearsay evidence which is admitted without objection becomes lawful evidence. Wilder v. State, 52 Ala. App. 157, 290 So.2d 225
(1974). "The fact that evidence which is introduced in a case may be, if objected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection." Smithv. State, 40 Ala. App. 600, 119 So.2d 202, cert. denied,270 Ala. 741, 119 So.2d 203 (1960).
It has been held time and again that if during the cross examination of a witness it is developed that the witness's knowledge and testimony on direct examination is based on hearsay, or other inadmissible evidence, the defendant's remedy is to make a proper motion to exclude such evidence from the jury. Oates v. State, 375 So.2d 1285 (Ala.Cr.App. 1979); Allredv. State, 55 Ala. App. 74, 313 So.2d 195 (1975); Smith v. State,28 Ala. App. 506, 189 So. 86 (1939); Bufkins v. State,20 Ala. App. 457, 103 So. 902, cert. denied, 212 Ala. 638,103 So. 906 (1925). Absent such a motion to exclude the trial court cannot be put in error and the entire testimony of the witness remains with the jury. Oates, supra; Allred, supra; Smith, supra; Bufkins, supra.
Applying these principles of law to the facts, Sergeant Mitchell's voice identifications of Kennedy, Andrews and the defendant were properly allowed to remain before the jury and were strongly corroborative of Kennedy's testimony.
When courts speak of the corroborative evidence required to establish perjury, they mean "proof of material and independent facts and circumstances, which, taken and considered together, tend in confirmation of the testimony of the single witness to establish the falsity of the oath." 70 C.J.S. Perjury § 70c (1)(1951). As in the case of accomplice testimony, corroborative evidence need not directly confirm any particular fact stated by the accomplice, Wyatt v. State, 51 Ala. App. 226,283 So.2d 675 (1973), and it need not go to every material fact to which he testifies. Montgomery v. State, 40 Ala. 684 (1867). Corroboration means to strengthen, not necessarily to prove any specific fact about which the accomplice has testified.Smothers v. State, 38 Ala. App. 153, 83 So.2d 374, cert. denied,263 Ala. 701, 83 So.2d 376 (1955). Yet, unlike the evidence required to corroborate accomplice testimony, the corroborative evidence required to establish perjury must be strong.
Without question, the tape recording and Sergeant Mitchell's testimony "tend in confirmation of the testimony of the single witness to establish the falsity of the oath." On the tape recording itself the parties call each other by name and the name of "Randall" is frequently used by one party in addressing another. These facts and circumstances, coupled with Mr. Kennedy's identification of the voices on the recording, provide sufficient identification of the voices and strong corroborative evidence of the perjury.
We note that the defendant objected to the admission of the tape recording but had no objection to furnishing the jury with copies of the transcript "to better interpret the tape." The transcript identified the speakers by name. Defense counsel stipulated that the transcript accurately reflected the information on the tape recording. The trial judge gave the defendant every opportunity to object to both the accuracy and the admissibility of the transcript, but no objections were made.
 II
The defendant also alleges that the accuracy of the tape recording machine and tapes was not established and that no *Page 326 
safeguards were exercised to prevent spoliation of the tape.
M.M. Kennedy, Jr. testified that he listened to the July 21st tape recording immediately after he "hung up the phone" and that the tape "contained the complete telephone conversation" between himself, Andrews and the defendant and that the tape was accurate and that nothing was deleted. "I initialed it and pulled the tabs out so it couldn't be altered." Kennedy stated that he turned the tape over to Sergeant Mitchell and listened to it on two other occasions when it was transcribed. He further stated that he checked the machine to make sure the tape could not be altered after the tabs were pulled out.
On voir dire Kennedy testified again that the three voices on the tape were his own, Andrews' and the defendant's. Kennedy stated that the recorder and the tape belonged to the State of Alabama, and that the tape "came out of a brand new pack." Kennedy further testified that state agents had hooked the recording device to the telephone, but that "I had control of it because I was the one that mashed the button."
Sergeant Mitchell testified that he "was present with the recorder when we turned it on to the recording position" and saw that Kennedy "actually pushed the button on." Sergeant Mitchell stated that the tape cassette was in the same condition at trial as it was when he took it out of the recorder on July 21. Mitchell saw Kennedy remove the tabs from the tape to prevent it from being altered. Mitchell testified that the recorder was tested for accuracy prior to the conversation: "We had tried it just before this conversation by putting the date on it through the telephone and it was recording — We played it back and it sounded the same as it had." Mitchell tested the tape in several ways and determined that it could not be altered without someone replacing the tabs or modifying the recorder. Mitchell further stated that the tape had been in his possession or in the evidence box since July 21. Mitchell admitted that other personnel within the Department of Public Safety could have had access to the tape, but there was no evidence that the tape had been tampered with or disturbed.
Essentially, we have the same situation here that existed inSexton v. State, 346 So.2d 1177 (Ala.Cr.App.), cert. denied,346 So.2d 1180 (Ala. 1977). There we held that the failure of the State to prove that the recording device used to record the conversation was capable of taking testimony was not error where a law enforcement officer testified that after his telephone conversation with the defendant he listened to the recording and found that it accurately and substantially reflected the conversation in which he had participated. Here, also, the tape recording was admitted without error.
 III
The defendant next argues that the trial court erred in limiting his cross examination of M.M. Kennedy, Jr. The trial court sustained the State's objections to the following questions propounded to Kennedy from the defendant:
 "Q. Let me ask you this, Mr. Kennedy: Did you ever send Randall (defendant) out of town on personal business for yourself so that you could call his wife?"
* * * * * *
 "Q. Did you ever call Mrs. Elaine Watson and try to get her to go out with you while Randall was out of town?"
* * * * * *
"Q. Did you try to go with his wife, Mr. Kennedy?"
* * * * * *
 "Q. Let me ask you this, Mr. Kennedy: Of your own independent knowledge, does he have any reason to be mad at you?"
The defendant maintains that the foregoing questions were asked to indicate Kennedy's bias against him and cites Proctor v.State, 331 So.2d 828, 830 (Ala.Cr.App. 1976) for the following proposition:
 "Where a witness' testimony is of major importance and is strongly adverse to the party against whom he has testified, the *Page 327 
usual discretion of a trial court has a narrow range, and it generally is required to allow proof of any important fact indicating bias of the witness."
When Kennedy was called as a defense witness later in the trial he testified that the defendant's wife called him on several occasions and that, after she had called him, he called her and asked her to go out with him. Any error resulting from the sustention of the State's objection was cured and eradicated when defense counsel was later allowed to ask this same question which the trial judge had previously prevented him from asking.
 "Q. Mr. Kennedy, I'll ask you this, please sir: Is it not a matter of fact that on many occasions you sent Randall Watson out of town on personal business so that you could make phone calls and try to get with his wife?
 "MR. YUNG [Assistant Attorney General]: That's repetitious, Judge. We went over that yesterday.
"THE COURT: I overrule it.
"Q. Answer my question, please, sir.
"A. No, sir."
Thus, it is apparent that the very questions the defendant maintains he was unduly restricted from asking during Kennedy's cross examination were, in fact, asked and answered when Kennedy was called as a defense witness. The bias the defendant argues he was not allowed to prove was in fact proved, definitely and fully. Therefore, any restriction in Kennedy's cross examination became harmless error at most. Alabama Rules of Appellate Procedure, Rule 45 reads:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection to the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties." (Emphasis added).
Error, if any, in ruling evidence inadmissible in a criminal proceeding is cured by a subsequent admission of the same evidence. Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. denied, 378 So.2d 1173 (Ala. 1979); Simmons v. State,353 So.2d 11 (Ala.Cr.App.), cert. denied, 353 So.2d 18 (Ala. 1977). Sustaining objections to certain questions asked during the cross examination of prosecuting witnesses is not harmful error where the defendant is subsequently permitted to ask and receive answers to questions which covered the substance of the questions ruled out. Hill v. State, 366 So.2d 296
(Ala.Cr.App.), affirmed, 366 So.2d 318 (Ala. 1978). The refusal to permit a witness to testify to certain facts does not require a new trial where at another time in the course of the trial the same witness is permitted to testify to those facts.Woodward v. State, 253 Ala. 259, 44 So.2d 241 (1950); Sullivanv. State, 22 Ala. App. 140, 114 So. 73, cert. denied, 216 Ala. 564,114 So. 74 (1927).
 IV
The defendant alleges that reversible error occurred due to certain comments made by the State in closing argument. Those comments are as follows:
 "MR. YUNG: `. . . you heard his own voice speaking on that tape so you know what he said over the telephone in that conversation. You have heard the court reporter who took his deposition in this courthouse testify to the lies he then told denying it. What happened in this case was he tried to blackmail Mickey Kennedy by threatening to give those tapes and negatives to . . .'
 "MR. MELSON [Defense Counsel]: Move for a mistrial, Your Honor.
"THE COURT: Overrule."
* * * * * *
 "MR. YUNG: `. . . this is no frivolous case. This man in this courthouse raised his right hand to heaven after filing a hundred thousand dollar lawsuit, swore to *Page 328 
God Almighty to tell the whole truth and nothing but the truth and lied in his teeth. He's a blackmailing, bald face liar under oath . . .'
 "MR. HARDEN [Defense Counsel]: Object and move for a mistrial. We move for a mistrial. That is the most improper argument I have ever heard in my life.
 "THE COURT: I will sustain the objection and will overrule the motion for a mistrial. Mr. Yung, restrict yourself, please."
The defendant maintains that the references to blackmail in the State's argument was improper and prejudicial. We disagree.
While it is true that evidence of separate crimes is inadmissible where the only probative function of such evidence is to show bad character, or an inclination or propensity to commit the type of crime for which an accused is being tried, if the accused's commission of another crime or misdeed is an element of guilt, or otherwise tends to prove his guilt, then proof of such other crimes is admissible. Sparks v. State,376 So.2d 834 (Ala.Cr.App. 1979); C. Gamble, McElroy's AlabamaEvidence § 69.01 (1) (3rd ed. 1977).
The test of a prosecutor's legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment in argument. Kirkland v. State, 340 So.2d 1139
(Ala.Cr.App.), cert. denied, 340 So.2d 1140 (Ala. 1976). Statements based on facts admissible in evidence are proper.Henley v. State, 361 So.2d 1148 (Ala.Cr.App.), cert. denied,361 So.2d 1152 (Ala. 1978). A prosecutor as well as defense counsel has a right to present his impressions from the evidence. He may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way. Williams v. State, 377 So.2d 634 (Ala.Cr.App. 1979); McQueen v. State, 355 So.2d 407 (Ala.Cr.App. 1978). Evidence of collateral crimes, if properly admitted, may be commented on by the prosecution in closing argument. Hayes v.State, 384 So.2d 623 (Ala.Cr.App.), cert. denied, 384 So.2d 627
(Ala. 1980).
Here, the State's evidence was replete with testimony that the defendant had tried to blackmail Kennedy. Contrary to his position in brief, appellate counsel argued that "some" of this evidence was properly admitted. The July 21st conversation, which the defendant swore never occurred and which subsequently became the basis for his perjury indictment, involved blackmail. Evidence of blackmail was necessarily testified to by Kennedy as the State established its prima facie case. It was not introduced to show the defendant's bad character or that he had an inclination or propensity to commit perjury. The defendant's demand of seventy-five thousand dollars and a black-four wheel drive truck in exchange for not turning over certain tapes and pictures to Kennedy's wife involved blackmail and was the essence of the July 21st conversation.
Applying the facts to the above principles of law we hold that the State did nothing more than comment on facts properly admitted into evidence and that the reference to blackmail was not improper.
Perjury is lying under oath. It is a crime involving willfullness and corruptness. The trial judge so instructed the jury. By referring to the defendant as a "bald face liar", the prosecutor merely used the vernacular to describe the offense with which the defendant was charged. This was a hard blow but it was not foul. We find no error in the prosecutor's remarks and in the action taken by the trial judge. Smith v. State,344 So.2d 1239 (Ala.Cr.App.), cert. denied, 344 So.2d 1243 (Ala. 1977).
 V
At the conclusion of the trial court's oral charge the defendant excepted because the trial court had not charged that, "if you find that any witness has testified falsely, then you may disregard any or all of that testimony." No written charge to this effect was requested. The court's failure to charge was not error. *Page 329 
Where a trial court's instruction to the jury is not as full as counsel desires, his remedy is to request written charges covering the matter omitted. Smith v. State, 262 Ala. 584,80 So.2d 307 (1955). An objection or exception to the failure of a court to charge on a matter is not necessary where a requested written charge is refused. An exception reaches only what the court did say. Grisham v. State, 147 Ala. 1, 41 So. 997 (1906). Here, the defendant's exception in no way pertained to any misstatement of law. Thus, there is nothing for this Court to review. The mere failure of a court to charge on any given subject in the absence of a proper request presents nothing for review. Jarrell v. State, 251 Ala. 50, 36 So.2d 336 (1948).
The defendant did present a written requested charge after the jury retired to consider its verdict. That charge, in its entirety, is:
 "Whether or not Mickey Kennedy falsely swore as to whether he had a telephone conversation. . . ."
This charge is not a statement of law nor even a complete sentence. Since the jury had retired to consider the case when this charge was presented, the request came too late. Key v.State, 8 Ala. App. 2, 62 So. 335 (1913).
 VI
The defendant submits that the trial court committed reversible error by using coercive and threatening language in its supplemental comments to the jury. The record does not indicate the exact time the jury began its deliberations on the morning of June 8, 1979. Trial began that morning at 8:00 A.M. The defense called its sole witness, closing arguments were had and the trial court charged the jury. Then the jury began its deliberations. After the jury had been deliberating, they requested additional instructions at 10:35 A.M. and at 10:55 A.M. The jury was allowed to separate for lunch from 11:50 A.M. to 1:00 P.M. It was at 1:45 P.M. that the following occurred which the defendant contends is error:
 "THE COURT: Ladies and gentlemen, the bailiff has reported to me that you are unable to reach a verdict in this case. Let me say this to you: We were a substantial period in the trial of this matter and I feel that this jury knows as much about the facts in this case as any twelve people that we can put in the jury box in Monroe County. I am completely unwilling at this time to discharge this jury because you say you can't reach a verdict and I would tell you that you should retire to the jury room and sit down and again go over this evidence; I charge you that you should give due consideration to the opinions of other people on the jury, to the end, if at all possible, that a verdict be reached in this case. If a verdict is not reached by you and in the event a mistrial is declared because of the failure of the jury to agree, it means simply that another jury will have to hear the same thing. This is going to entail a lot of expense to the people of this county and this state and I feel like under the facts of this case that reasonable people should be able to agree on a verdict in this case, so therefore, ladies and gentlemen, retire to the jury room and continue your deliberations."
We have carefully considered the case of Orr v. State,40 Ala. App. 45, 111 So.2d 627 (1958), affirmed, 269 Ala. 176,111 So.2d 639 (1959), cited by the defendant. After examining the charge as a whole, Whittle v. State, 205 Ala. 639, 89 So. 43
(1921), we do not believe the charge was either coercive or threatening. As in Jones v. State, 56 Ala. App. 444,322 So.2d 735, cert. denied, 295 Ala. 408, 322 So.2d 741 (1975), the trial court in no way suggested which way the verdict should be returned and the jury had deliberated only a short time before the above request was made of them. Moreover, it is not error for a trial court to call the jury's attention to the time and expense a new trial would entail. Ashford v. State, 183 Ala. 620,62 So. 879 (1913); Poellnitz v. State, 48 Ala. App. 196,263 So.2d 181 (1972). There was no urging as in Orr, supra, that "the court expects a *Page 330 
verdict", or that "the taxpayers of this county expect a verdict, not an exhibition of obstinancy."
 VII
In his motion for new trial the defendant alleges that the trial court erred in refusing his request number one for voir dire of the jury venire. Request number one reads:
 "Is any member of this jury venire related by blood or marriage to either witness in this case?"
The extent and scope of examination of prospective jurors are matters within the sound discretion of the trial judge, and his conduct of the examination, absent abuse of discretion, will not result in reversible error. Radford v. State,348 So.2d 880, 884 (Ala.Cr.App. 1977); Johnson v. State, 335 So.2d 663
(Ala.Cr.App.), cert. denied, 335 So.2d 678 (1976).
In the instant case there were more than two witnesses who testified; to have asked the requested question verbatim would have been confusing. While the enumerated causes of challenge set out in Alabama Code Section 12-16-150 (1975) are not exclusive, but illustrative, we note that the defendant's request number one does not fall within that section. Beasleyv. State, 39 Ala. App. 182, 96 So.2d 693 (1957); Biggs v. State,20 Ala. App. 449, 103 So. 706 (1924).
Of importance here, however, is the fact that the trial judge did ask the defendant's request number two: "Is any juror personally acquainted with either the witnesses in this case or a member of their immediate family?" This question is broader in scope than defendant's request number one and for this reason was sufficient to uncover any possible bias a prospective juror may have had for or against a particular witness. Substantial error is not presumed, but the burden is upon the appellant to show error. Aaron v. State, 273 Ala. 337,139 So.2d 309, 314 (1961). We hold that the trial court did not abuse its discretion.
 VIII
Ground 56 of the defendant's motion for new trial alleges that members of the jury panel failed or refused to respond to voir dire questions during jury selection for his trial and that such failure to respond denied him a fair trial. The defendant filed a motion to subpoena jurors to establish these facts. Both motions were denied. The defendant contends these rulings were erroneous.
The rule is well settled that:
 "the failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror, regardless of the situation or circumstances, does not automatically entitle one to a new trial. The proper inquiry in such cases is whether the defendant's rights were prejudiced by such failure to respond properly."
 Beauregard v. State, 372 So.2d 37, 41 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala. 1979).
However, here the defendant's motions did not comply with the rule stated in Williams v. State, 342 So.2d 1328, 1329 (Ala. 1977).
 "A motion challenging the composition of a grand jury, petit jury, or qualifications of individual jurors, filed after the commencement of trial, must allege, and proof must show, that grounds for the motion were not known to the defendant before he went to trial, or that he could not have known them by exercising due diligence."
See also Smiley v. State, 371 So.2d 469 (Ala.Cr.App. 1979).
Whether the trial court would have granted the motion for a new trial and the companion motion to subpoena jurors if there had been an allegation and proof that the grounds for the motion were not known and could not have been known by the exercise of due diligence is not for our determination, but in the absence of such allegation and proof we are precluded from holding the trial court erred. *Page 331 
 IX
In response to the defendant's "Amended Motion for Leave to Subpoena Jurors" filed to supplement the motion for new trial, the State filed the affidavit of juror Eva C. Crowe. The trial judge overruled the defendant's motion to subpoena this juror and the defendant alleges error.
The general rule is stated in C. Gamble, McElroy's AlabamaEvidence, § 94.06 (1) (3rd ed. 1977):
 "A party's introduction of the juror's affidavit, in support or in impeachment of the verdict, is the equivalent of a direct examination of the juror. The introduction of such an affidavit entitles the opposing party to have the juror brought to court for cross examination."
Yet, here again, the defendant failed to comply with the rule stated in Williams, supra.
We are at a particular loss in reviewing the trial court's order denying the defendant's motion for new trial. The order denying the motion indicates that a hearing was held[1], but the particulars of that hearing were not reported although both the State and the defendant were under the impression that the proceedings were to be recorded and transcribed by the court reporter.
The defendant filed a motion to correct the record under Rule 10 (f), A.R.A.P. However, the State could not agree with the defendant's proposed stipulation. The State responded: "[I]t can neither admit and join in the appellant's proposed stipulation nor can it propose a different stipulation concerning the December 28, 1979, hearing in this case." It does not appear that this matter was submitted to the trial judge.
Error cannot be based on matters not shown in the record.Shelton v. State, 371 So.2d 451 (Ala.Cr.App. 1979). This Court cannot consider statements contained in the appellant's brief as to facts and events not reflected by the record on appeal.Edwards v. State, 287 Ala. 588, 253 So.2d 513 (1971); Miles v.State, 366 So.2d 346 (Ala.Cr.App. 1978).
On appeal the presumption exists that the ruling denying the motion for new trial is correct. Brooks v. State, 248 Ala. 628,29 So.2d 4 (1947). In reviewing the refusal of a motion for new trial, this Court will indulge every presumption in favor of the correctness of the trial court. Henley v. State,361 So.2d 1148, (Ala.Cr.App.), cert. denied, Ex parte Henley,361 So.2d 1152 (Ala. 1978). Where the record on appeal is silent, it will be presumed that what ought to have been done was not only done, but was rightly done. Robertson v. State, 29 Ala. App. 399,197 So. 73, cert. denied, 240 Ala. 51, 197 So. 75 (1940).
For the reasons we have stated, this Court cannot find error in the rulings of the trial court on these issues.
We have carefully examined each issue raised in brief and presented at oral argument. In addition, we have searched the entire record for error as required by law and found no prejudicial error. The judgment of the Circuit Court is due to be affirmed.
AFFIRMED.
ALL Judges concur.
[1] "ORDER
 "The defendant in this case having filed a motion for new trial, asking that his conviction in this case be set aside and held for naught and that he be granted a new trial on the indictment, and a plenary hearing having been held on said motion, at which the defendant was present in open court in his own proper person and by counsel of his choice, upon due consideration and deliberation, it is ORDERED, ADJUDGED, AND DECREED by the Court that the said motion is due to be, and the same is hereby, DENIED.
"Done this the 30th day of Jan., 1980." *Page 332